IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 21, 2000 Session

**STATE OF TENNESSEE v. DEANDRADE PHILLIPS**

**Appeal from the Criminal Court for Sullivan County**
**No. S41,776     Phyllis H. Miller, Judge**

_____

**No. E2000-00153-CCA-R3-CD**
**March 15, 2001**
_____

The defendant appeals from his conviction for selling less than one-half gram of cocaine, contesting the sufficiency of the evidence, the trial court's restrictions of his examinations of witnesses, the trial court's failure to require the state to elect the offense for which it sought a conviction, and the jury instructions.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOE G. RILEY, J., joined.

John B. Nisbet, III, Cookeville, Tennessee (on appeal); Stephen M. Wallace, Public Defender and Leslie S. Hale, Assistant Public Defender (on appeal and at trial), for the appellant, Deandrade Phillips.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Gregory Alan Newman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Deandrade Phillips, appeals from his conviction by a Sullivan County Criminal Court jury for selling less than one-half gram of cocaine, a Class C felony.  The trial court sentenced the defendant as a Range I, standard offender to six years incarceration.  The defendant contends that (1) the evidence is insufficient to support his conviction, (2) the trial court placed unreasonable restrictions upon his examinations of several of the state's witnesses, (3) the trial court erred by not requiring the state to elect the offense for which it sought a conviction, and (4) the trial court improperly instructed the jury regarding criminal responsibility and lesser included offenses.

At trial, Detective David Street of the Kingsport Police Department testified as follows:  On June 18, 1998, he provided surveillance for an undercover drug purchase in the Riverview

community. He hid in tall grass near the railroad tracks off of Lincoln Street. He had binoculars, a camera, and two radios, one with which he maintained contact with Detective David Quillen, who was assisting in the operation from another location, and one with which he could listen to the transaction via the body wire of Susan Stickel, the confidential informant. When Ms. Stickel drove into Riverview on Lincoln Street, he heard Tyrone Phillips, who was standing with Amos Phillips and another black male near a brick building, shout at her. Ms. Stickel stopped, and Tyrone Phillips, who was also known as T-Bone, walked toward the car. Ms. Stickel told him that she wanted a gram of cocaine, and he walked back to the brick building and was out of view for about ten seconds. He returned to the car, at which point Ms. Stickel complained about the amount of cocaine he was offering. He said he would get more, walked toward the brick building, and met the black male, who handed him a small package. He then went to the car, and about ten seconds later, Ms. Stickel drove away. Detective Street left his surveillance post and returned to the operation's meeting place.

Detective Street testified that he was hiding about two hundred feet from the location where the buy occurred and that he took four photographs during the transaction. He stated that he was ninety-eight percent sure that the black male who handed Tyrone Phillips the small bag was the defendant. He said that he drove through the Riverview community about forty-five minutes to one hour after the buy to confirm his belief but that the defendant and the others were gone. He stated that he had previous contact with the defendant at least three times and that, after looking at the photographs he had taken, he was one hundred percent sure that the defendant was the person who handed Tyrone Phillips the small bag. Detective Street stated that he showed the photographs, which were admitted into evidence, to Detective Quillen and Detective Marvin Bell and that they also identified the black male as the defendant.

On cross-examination, Detective Street admitted that he lost sight of Tyrone Phillips when Phillips left Ms. Stickel's car the first time and did not know from where the first bag of cocaine came. Detective Street also admitted that none of the photographs showed the defendant and Tyrone Phillips together and that he did not see any money given to the defendant. He testified that in his typed, June 18th report, he stated that Tyrone Phillips got the second bag of white powder from the black male who was standing beside Amos Phillips. He said that a few days later, he added a handwritten note to his report that the black male had been identified as the defendant. He stated that he was certain the white powder was cocaine because Ms. Stickel drove directly to their meeting place after the buy and turned over the two packages of white powder, which a field test and a laboratory test determined to be cocaine.

Detective Street acknowledged that he had been involved in a traffic stop in which he mistook a paper receipt for a bag of cocaine. He said that the stop occurred at night, and before the car stopped, he saw something white thrown out of its window. He suspected that the white substance was drugs because he knew the driver of the car to be a drug dealer. He admitted that the white substance was actually a torn receipt. Detective Street stated that although he knew Tyrone Phillips to be a drug dealer, he knew the defendant had not handed Tyrone a piece of paper because Ms. Stickel drove directly to their meeting place and gave them the bags of white powder, which tests revealed to be cocaine.

Susan Stickel testified as follows: On June 18, 1998, she was employed by the Kingsport Police Department to make controlled drug buys in the Riverview area. She had made about twenty buys before this one, and she followed her normal routine for this buy. A female officer searched her at the police department, and then officers searched her car and equipped it with a video camera. The officers placed an audio wire on her and gave her money to buy the drugs. As she drove through Riverview, a black male asked her what she wanted. When she said she wanted a gram, he told her to stop her car. She parked on the street, and the man came to the driver-side window and handed her one bag of white powder, saying that "it was straight, it was rock." She told him that it was not enough, and he told her that he would get more, at which point he walked behind the car, met another black male, and returned with two bags. She took the two bags and gave him one hundred dollars. She then drove to the operation's meeting place and gave Detective Quillen the bags. The videotape of the buy was admitted into evidence and played for the jury.

On cross-examination, Ms. Stickel admitted that she did not know the defendant or the man from whom she had bought the cocaine. She also stated that she did not see anything exchanged when the man selling her the cocaine went behind her car and talked with the other black male.

Detective David Quillen of the Kingsport Police Department testified as follows: On June 18, 1998, around 6:00 p.m., he met with Ms. Stickel, Detective Street, and Detective Joey Graham. A female officer had already searched Ms. Stickel at the police station, and he searched Ms. Stickel's car and equipped it with a video camera. He gave her one hundred dollars and told her to drive to Riverview and buy a gram of cocaine. He and Detective Graham were in an unmarked car about fifty yards from where the buy occurred and listened to it via Ms. Stickel's body wire. However, they could not communicate with her nor could they see the transaction. When Ms. Stickel drove away after buying the cocaine, her car came into his view, and he followed her to their meeting place, where she gave him the two bags. He performed a field test, which revealed the substance to be cocaine. The two bags were kept as evidence and sent to the Tennessee Bureau of Investigation (TBI) for further testing.

Detective Quillen testified that on July 6, 1998, he overheard Detective Street asking Detective Bell to identify a person shown in a photograph and that a few minutes later, he identified for Detective Street the person in the photograph as the defendant, whom he knew. He also identified Tyrone Phillips and Amos Phillips from other photographs. He then filed a supplement to his report, indicating that the defendant would be charged with selling cocaine. On cross-examination, Detective Quillen testified that at the officers' post-buy meeting, Detective Street said he believed that the defendant had handed Tyrone the bag but that he wanted to drive through Riverview to get a better look at the defendant.

Denise Buckner, a TBI forensic chemist, testified that she received two bags of white powder from Detective Quillen, tested the substance, and identified it as cocaine. She stated that one bag contained 0.35 grams of cocaine and that the other bag contained 0.37 grams.

The defendant recalled Detective David Quillen, who testified that Ms. Stickel was not asked to identify Tyrone Phillips or the defendant from the photographs taken by Detective Street. He stated that his June 19th report did not mention the defendant by name because they were not one hundred percent sure about the black male's identity on that date. When asked why a drug dealer would not have drugs on his person when he approached a car to make a sale, Detective Quillen replied that the dealer may be assisting another, major dealer. He said that he did not believe the defendant was a major dealer and did not remember seeing the defendant during other controlled buys.

The defendant recalled Detective David Street, who testified that he asked Detective Marvin Bell to identify the black male in the photograph he had taken because Detective Bell had worked in the Riverview community and knew many of the people who lived there. He stated that the traffic stop in which he mistook a receipt being thrown out of a car for drugs occurred before June 18, 1998, possibly one and a half to two years earlier.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his conviction for selling less than one-half gram of cocaine, arguing that there is no evidence that he acted with criminal responsibility for Tyrone Phillips's actions. The state contends that the evidence is sufficient. We agree with the state.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

The state was required to prove that the defendant knowingly sold less than one-half gram of cocaine. See Tenn. Code Ann. § 39-17-417.

> "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn. Code Ann. § 39-11-302(b). Additionally, the defendant is criminally responsible for an offense committed by another if, "[a]cting with intent to promote or assist the commission of the

offense, or to benefit in the proceeds or results of the offense, the [defendant] solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2).

In this case, the evidence viewed in the light most favorable to the state reveals that when Ms. Stickel drove into the Riverview area, Tyrone Phillips asked her what she wanted. She responded that she wanted a gram, and he walked behind a brick building, then returned to Ms. Stickel's car with a bag of cocaine. When Ms. Stickel said that the amount was not enough, he told her that he would get more. He then walked behind Ms. Stickel's car, where the defendant met him and handed him a bag of cocaine. Tyrone Phillips immediately returned to the car and sold two bags of cocaine to Ms. Stickel for one hundred dollars. A field test and a TBI laboratory test confirmed that the substance in the bags was cocaine. Further, the TBI test revealed that the two bags contained 0.35 and 0.37 grams, respectively. A rational jury could have found beyond a reasonable doubt that Tyrone Phillips knowingly sold to Ms. Stickel two bags of cocaine and that the defendant, intending to assist in the commission of this offense, aided him by giving him one of the bags of cocaine.

## II. RESTRICTIONS UPON DEFENDANT'S EXAMINATIONS OF WITNESSES

The defendant contends that the trial court unreasonably restricted his examinations on three occasions and that, therefore, he is entitled to a new trial. The state contends that trial court either did not place restrictions upon the defendant's examinations or placed reasonable restrictions upon irrelevant matters. We agree with the state.

The defendant first complains that the trial court unreasonably restricted his cross-examination of Detective Street. The defendant was questioning Detective Street about whether he could be biased to think that a substance was cocaine because the person in possession of the substance was a known drug dealer. Although the trial court initially sustained the state's objection that the questioning was irrelevant, after a bench conference the trial court stated, "Okay, you go ahead and ask him. . . . You're the defense attorney, if you want to ask him, you ask him." The defendant then questioned Detective Street about whether he was biased against known drug dealers. The defendant does not state how his cross-examination was restricted, and the record reveals that the defendant was allowed to pursue this line of questioning without any restrictions being imposed.

Second, the defendant complains that trial court unreasonably restricted his examination of Detective Quillen when he was recalled during the defendant's proof. The defendant asked Detective Quillen whether he believed that the defendant was a big time drug dealer, at which point the trial court asked defense counsel to approach the bench and reminded her that it had previously ruled that the detective could not testify about the defendant's prior crimes. Defense counsel insisted that the questions were important to establish that the defendant was not a major drug dealer. At the end of a jury-out hearing, the trial court stated that the defendant could pursue this line of questioning. Again, the defendant does not state how his examination was restricted, and the record reveals that the defendant was allowed to question Detective Quillen without any restrictions being imposed.

Third, the defendant complains about restrictions upon his examination of Detective Street when he was recalled during the defendant's proof. The defendant wanted to establish the exact date on which Detective Street mistook a paper receipt, which was thrown out of a moving car at night, for drugs in a prior, unrelated case. The defendant said that he wanted to establish that the incident occurred well before this case arose, and the trial court responded that the exact date was irrelevant, stating that there was no need to establish the exact date through affidavits from another case. The trial court, however, said that the defendant could ask Detective Street whether the incident occurred prior to this case and how long he had been working in the vice department at that time. The standard of review of a trial court's decision based upon the relevance of proffered evidence under Rules 401 and 402, Tenn. R. Evid., is abuse of discretion. State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997). We conclude that the trial court did not abuse its discretion in preventing the defendant from establishing the exact date of this prior incident.

## III. ELECTION OF OFFENSES

The defendant argues that the one-count presentment charges two distinct offenses – the sale of five-tenths grams or more of cocaine and the delivery of five-tenths grams or more of cocaine – and that the trial court erred by not requiring the state to elect between these offenses. The state contends that an election was not required.

When the state charges a defendant with one offense but produces evidence of multiple offenses, the doctrine of election requires the state to elect the particular offense for which it seeks a conviction. State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999). The doctrine enables the defendant to prepare for a specific charge, protects the defendant against double jeopardy, and, most importantly, ensures that jurors deliberate over and render a verdict based upon the same offense. Id. However, an election is not required in cases where "only one offense is at issue based upon a single criminal occurrence." State v. Lemacks, 996 S.W.2d 166, 171 (Tenn. 1999) (citations omitted); see State v. Brown, 823 S.W.2d 576, 584 (Tenn. Crim. App. 1991) ("A presumption of [juror] unanimity may be made if the case involves one event-one crime evidence."). "When the evidence does not establish that multiple offenses were committed, the need for election never arises." State v. Adams, 24 S.W.3d 289, 294 (Tenn. 2000).

In State v. Thomas E. Davenport, No. M2000-00317-CCA-R3-CD, Williamson County, slip op. at 5 (Tenn. Crim. App. Nov. 17, 2000), a panel of this court addressed a co-defendant's argument that the trial court erred by failing to require the state to make an election between the sale of cocaine and the delivery of cocaine. In that case, the evidence presented one set of facts – a confidential informant bought cocaine from the co-defendant. We concluded that an "election is not required where the jury chooses which offense was committed based upon a single set of facts." Id. (citing Lemacks, 996 S.W.2d at 170-71).

In this case, the evidence presented a single criminal act relative to the defendant – that is, the defendant handed Tyrone Phillips a bag of cocaine which was then sold to Ms. Stickel. The trial court instructed the jury regarding the sale of more than one-half gram of cocaine and the delivery

of more than one-half gram of cocaine (and the lesser included offenses of each) separately and instructed it that the defendant could only be convicted of one offense. The jury was left to determine which offense was committed based upon the single criminal occurrence presented by the evidence. We conclude that the trial court did not err in failing to require the state to make an election.

## IV. JURY INSTRUCTIONS

The defendant contends that the trial court erred by instructing the jury on criminal responsibility, arguing that there was no evidence to support such an instruction. The defendant also argues that the trial court erred in instructing the jury regarding the lesser included offenses because it did not refer to the offenses as "lesser included." The state contends that the trial court properly instructed the jury. We agree.

Criminal responsibility for the conduct of another is a theory upon which the state may prove the defendant's guilt for an offense. See Tenn. Code Ann. § 39-11-401. The defendant is criminally responsible for an offense committed by another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the [defendant] solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2).

In this case, Detective Street testified that he saw the defendant hand a bag of white powder, which tests revealed to be cocaine, to Tyrone Phillips, who then immediately sold it to Ms. Stickel. The theory of criminal responsibility was raised by the evidence, and thus, the trial court properly instructed the jury regarding this theory. See State v. Johnson, 910 S.W.2d 897, 900 (Tenn. Crim. App. 1995).

The defendant also challenges the trial court's instructions regarding lesser included offenses. The trial court instructed the jury regarding the elements of the charged offense and of all the lesser included offenses. It instructed the jury that it could only find the defendant guilty of one offense. After the instruction on each offense, the trial court further instructed the jury, "If, however, you have a reasonable doubt as to the defendant's guilt of [insert offense], then your verdict must be not guilty as to the offense; and you shall proceed to determine his guilt or innocence of [next offense]." The defendant asserts that the jury was confused by this instruction because the court did not describe the subsequent offenses as lesser included. As authority for his position, the defendant relies upon Tennessee Pattern Jury Instruction 41.01, which is identical to the trial court's instruction with the exception that it describes the subsequent offenses as lesser included. However, pattern jury instructions are not controlling authority, and trial courts are not bound to their language. See State v. Hodges, 944 S.W.2d 346, 354 (Tenn. 1997). Although such an instruction might be preferred, the defendant does not cite any authority that requires the offenses included in the charged offense to be specifically described in the jury instructions as lesser included. We believe the trial court's instructions were clear, accurate, and complete and do not believe that the jury was confused by the

included offenses not being described as lesser included.  We conclude that the trial court did not err in instructing the jury.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE