**STATE of Tennessee, Appellee,**

v.

**James A. BROWN, Appellant.**

Supreme Court of Tennessee,
at Jackson.

April 19, 1999.

Rehearing Denied June 21, 1999.

Scott G. Kirk, Hardee, Martin & Jaynes, Jackson, for Appellant.

John Knox Walkup, Attorney General & Reporter, Michael E. Moore, Solicitor General, Elizabeth T. Ryan, Assistant Attorney General, Nashville, for Appellee.

John W. Pierotti, District Attorney General, Memphis, Karen Cook, Assistant District Attorney General, Memphis (at Trial), for Appellee.

## OPINION

ANDERSON, C.J.

We granted this appeal to determine whether at the conclusion of the evidence the prosecution elected the particular offense charged in the indictment upon which it sought a conviction. Such an election is required to preserve the defendant's constitutional right to a unanimous jury verdict.[1]

The defendant was indicted and convicted of one count of rape of a child. The Court of Criminal Appeals affirmed. After our review of the record and applicable law, however, we conclude and the State concedes that at the end of the proof, the prosecutor did not elect a specific offense charged in the indictment upon which it sought a conviction. Such an election, if made as required by law, would enable all jurors to deliberate over and render a verdict based on the same offense. The prosecutor's failure violated the defendant's constitutional right to a unanimous jury verdict. The judgment is, therefore, reversed and the case is remanded for a new trial.

## BACKGROUND

The victim, M.T.,[2] who was six years of age at the time of trial, lived across the street from the defendant, James A. Brown. She first testified that two years earlier, when she was four years of age, the defendant pulled up her dress, pulled down her underwear, and "put his finger down in her private part." M.T. testified that the act occurred in Brown's trailer. She could not recall the exact date this happened, only that it was a Friday and that it was warm outside.

The victim's testimony as to the number of acts committed varied. She initially testified that Brown penetrated her private part with his finger five times on the same occasion. She later said that it happened five different times, on different days. She also acknowledged that she had told the police that it happened only twice. She also testified that on a later occasion, after the alleged acts of penetration, Brown took two photographs of her with her dress pulled up and her underwear visible.

The victim's mother testified that sometime prior to Easter in April 1993, the victim showed her the photograph that the defendant had taken. Although the victim's mother said the photograph made her angry, she did not confront the defendant because "he would have just denied it." She also testified that sometime after the photograph incident, possibly as long as one year, the victim told her mother that the defendant had "messed with her privates." The victim's mother said that M.T. initially made the assertion but claimed to be lying or joking. Approximately one week later, the victim again made the claim about the defendant's conduct, and said that she was not lying or

1. The appeal was also granted to determine whether the indictment, which stated in part that the defendant "did unlawfully sexually penetrate [the victim], a child less than thirteen (13) years of age, in violation of Tenn. Code Ann. § 39–13–522" was defective for failing to state the required *mens rea*. The

defendant now concedes, however, that this issue was resolved by our decision in *State v. Hill*, 954 S.W.2d 725 (Tenn.1997).

2. The Court's policy is to refer to victims of sexual abuse by their initials.

joking. Although the assertion "came out of the blue," the victim's mother testified that M.T. had been having nightmares and had been wetting the bed for several months.

Both the mother and the victim stated that M.T. visited the defendant in his trailer on several occasions both before and after the alleged acts of penetration.

A nurse testified that an examination revealed an "abnormal notch" in the victim's hymen. She testified that such an abnormality was not usually caused by falling or the child scratching herself and concluded that it was "consistent with digital penetration."

The defense presented numerous witnesses from the neighborhood who knew Brown and the victim. These witnesses indicated that the victim was unsupervised on numerous occasions and often went in and out of neighbors' trailers. Each witness also testified that the victim's reputation for truthfulness was poor and that she was known to make untrue statements.

At the conclusion of the evidence, the trial court required the state to elect which offense alleged in the victim's testimony it relied upon to seek the conviction. The State did not elect a specific offense, but rather, narrowed the time frame from that alleged in the indictment. Thus, the trial court instructed the jury as follows:

> The indictment alleges that this offense occurred during the period of time between March 1, 1993, and September 30, 1993. *The State has made an election that the alleged incident occurred between Easter, April 11, 1993, and June 30, 1993.*

(Emphasis added).

The jury convicted Brown of the offense of rape of a child. After the Court of Criminal Appeals affirmed the conviction, we granted this appeal.

### ELECTION OF OFFENSES

This Court has consistently held that when the evidence indicates the defendant has committed multiple offenses against a victim, the prosecution must elect the particular offense as charged in the indictment for which the conviction is sought. *See Tidwell v. State,* 922 S.W.2d 497 (Tenn.1996); *State v. Shelton,* 851 S.W.2d 134 (Tenn.1993); *Burlison v. State,* 501 S.W.2d 801 (Tenn.1973); *State v. Brown* 762 S.W.2d 135 (Tenn.1988).

The requirement of election serves numerous interests: it enables the defendant to prepare for the specific charge; it protects a defendant against double jeopardy; it enables the trial judge to review the weight of the evidence in its role as thirteenth juror; and it enables an appellate court to review the legal sufficiency of the evidence. *See Tidwell,* 922 S.W.2d at 500–01; *Burlison,* 501 S.W.2d at 803. The most important interest served by election, however, is to ensure that the jurors deliberate over and render a verdict based on the same offense:

> [T]here should be no question that the unanimity of twelve jurors is required in criminal cases under our state constitution. A defendant's right to a unanimous jury before conviction requires the trial court to take precautions to ensure that the jury deliberates over the particular charged offense, instead of creating a "patchwork verdict" based on different offenses in evidence.

*Shelton,* 851 S.W.2d at 137 (citation omitted); *see Tidwell,* 922 S.W.2d at 501.

In each of our previous cases decided over the last twenty-five years, i.e., *Burlison* in 1973, *Brown* in 1988, *Shelton* in 1993, and *Tidwell* in 1996, which have consistently required the prosecutor to elect a specific offense, we have recognized the practical difficulties present in applying the election requirement to victims of child sexual abuse. We are sensitive to the fact that young children who are victims of child abuse may not be able to testify that abuse occurred on a specific date, or provide extensive details in this regard. We have therefore emphasized in *Shelton* that

election may be accomplished in multiple ways:

> If, for example, the evidence indicates various types of abuse, the prosecution may identify a *particular type of abuse* and elect that offense. Moreover, when recalling an assault, a child may be able to describe *unique surroundings or circumstances* that help to identify an incident. The child may be able to identify an assault with *reference to a meaningful event* in his or her life, such as the beginning of school, a birthday, or a relative's visit.

*Id.* at 138 (emphasis added) (citation omitted). These broad guidelines accommodate the practical difficulties in cases involving child victims while also implementing the protections served by the election requirement. In short, "[a]ny description that will identify the prosecuted offense for the jury is sufficient." *Id.*

■ Despite the breadth of alternatives suggested in *Shelton,* the election in this case was again insufficient. The victim initially testified that Brown put his finger in her private part five times during one visit in his trailer. This abuse occurred on a Friday, when it was warm outside. She also testified, however, that acts of digital penetration by Brown occurred five times on different days. On another occasion, the victim told police that abuse had occurred twice.

■ The prosecution did not attempt to clarify the victim's testimony, or clarify the conflicts in the testimony, either by eliciting additional details or by relating the timing of the abuse to some other occasion in the victim's life. Moreover, instead of relying upon the few details that were elicited, for example, an incident that occurred on a Friday when it was warm, to make the election, the prosecution did not elect a specific offense but simply narrowed the time-frame of the charged offense from the period alleged in the indictment (March 1, 1993, to September 30, 1993) to an offense occurring between Easter, April 11, 1993, and June 30, 1993. This time-frame limitation was not an election and failed to ensure that the jury would focus on a single offense.

■ Moreover, as the State now concedes on appeal, the deficiency in the election at trial was further compounded by the fact that the time-frame chosen by the prosecutor was simply inaccurate. A close reading of the testimony reveals that the victim testified that acts of digital penetration were committed by Brown in Brown's trailer *prior* to the occasion on which Brown took the photographs of the victim. The victim's mother testified that she saw the photograph of the victim prior to Easter, April 11, 1993. The State nonetheless "elected" an offense between April 11, 1993 and June 30, 1993—a period for which the victim described no specific offenses. Accordingly, even had the elected offense been sufficiently detailed, the evidence did not support the time-frame selected by the State.[3]

■ The State further concedes on appeal that the evidence is legally insufficient in this regard. With this contention we cannot agree. The State is not required to prove that an offense was committed on a specific date unless the date is an element of the crime or essential to proving the offense. *State v. Byrd,* 820 S.W.2d 739, 741–42 (Tenn.1991). The election doctrine only requires the State to select which of multiple offenses in evidence it relies upon to seek the conviction to ensure that the jury focuses on and is unanimous with respect to that conviction. Therefore, the remedy for the State's failure to satisfy the election requirement is a new trial and not a dismissal due to insufficient evidence.

**3.** Similarly, even though the victim described only one type of act and the defendant was convicted of one count charging that type of act, the erroneous time-frame also precludes a finding that the failure to elect was harmless. *Cf. Shelton,* 851 S.W.2d at 138 (finding failure to elect harmless as to one of the victims).

The requirement of election is "fundamental, immediately touching on the constitutional rights of an accused." *Burlison*, 501 S.W.2d at 804. As we observed in *Shelton:*

> We appreciate the difficulties involved in prosecuting cases of sexual abuse committed against small children. In such cases, the rules of evidence and the rules of procedure have been relaxed to some extent to accommodate very young witnesses. Nevertheless, the constitutional protections guaranteed a criminal defendant, who is presumed by law to be innocent until proven guilty, cannot be suspended altogether because of the victim's age or relative inability to testify. *In cases such as this one, the state must either limit the testimony of prosecuting witnesses to a single event, or prepare the case so that an election can be made before the matter is submitted to the jury to decide.*

851 S.W.2d at 139 (emphasis added). Accordingly, this case must be remanded to the trial court for a new trial in accordance with the principles discussed in this opinion.

### CONCLUSION

After our review of the record and applicable authority, we have concluded, and the State concedes, that the prosecutor failed to properly elect the offense upon which it sought to base the defendant's conviction. We therefore reverse the judgment of the Court of Criminal Appeals and remand the case to the trial court for a new trial. Costs of appeal are taxed to the State.

DROWOTA, BIRCH, HOLDER and BARKER, JJ., concur.