IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 8, 2001 Session

## STATE OF TENNESSEE v. ROBERT DERRICK JOHNSON

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Bedford County**
**No. 14272     William Charles Lee, Judge**

---

**No. M1998-00546-SC-R11-CD - Filed August 22, 2001**

---

E. RILEY ANDERSON, C.J., with whom JANICE M. HOLDER, J., joins, concurring in part and dissenting in part.

I fully concur in the majority's affirmance of the defendant's convictions and sentences for aggravated robbery and false imprisonment. The majority, however, has erroneously concluded that the prosecution was not required to make an election of offenses and that the trial court did not err in failing to give an enhanced instruction to ensure that the jury's verdict was unanimous as to the offense of sexual battery. The majority's holding is based on its view that there was evidence of only one offense of sexual battery, notwithstanding the fact that the defendant committed two separate and distinct acts of sexual contact against the victim. In reaching this conclusion, the majority has misapplied existing precedent and statutory law and has created a muddled analysis that, as applied to the offense of sexual battery, permits a defendant to commit numerous acts of sexual contact against a victim with no criminal consequence. I therefore dissent.

In my view, there was evidence from which the jury could reasonably find two offenses of sexual battery and the prosecution was therefore required to elect which offense it relied upon to establish the conviction. Moreover, the prosecution's failure to follow this well-established requirement denied the defendant his constitutional right to a unanimous jury verdict in violation of article I, § 16 of the Tennessee Constitution and requires a new trial on this offense.

### ELECTION OF OFFENSES

As the majority recognizes, this Court has long and consistently held that "when the evidence indicates [that] the defendant has committed multiple offenses against a victim, the prosecution must elect the particular offense as charged in the indictment for which the conviction is sought." State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999). This requirement, which is grounded in part upon the Tennessee Constitution, has been reaffirmed and enforced by this Court on numerous occasions. See

State v. Kendrick, 38 S.W.3d 566, 568 (Tenn. 2001); State v. Walton, 958 S.W.2d 724, 727 (Tenn. 1997); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996); State v. Shelton, 851 S.W.2d 134, 137 (Tenn. 1993).

The paramount importance of the election requirement is that it protects a defendant's right to a unanimous jury verdict under the Tennessee Constitution by ensuring that jurors deliberate over and render a verdict based on the same offense. State v. Brown, 992 S.W.2d at 391. As this Court has observed:

> [T]here should be no question that the unanimity of twelve jurors is required in criminal cases under our state constitution. A defendant's right to a unanimous jury before conviction requires the trial court to take precautions to ensure that the jury deliberates over the particular charged offense, instead of creating a "patchwork verdict" based on different offenses in evidence.

State v. Shelton, 851 S.W.2d at 137 (citations omitted). The election requirement serves other interests as well: it enables a defendant to prepare for a specific charge; it protects a defendant against double jeopardy; it enables the trial court to review the weight of the evidence in its capacity as thirteenth juror; and it enables the appellate court to review the legal sufficiency of the evidence. See State v. Brown, 992 S.W.2d at 391.

The majority asserts that the election doctrine has often been applied in cases involving multiple offenses occurring over a period of time. See State v. Walton, 958 S.W.2d at 727. While this assertion may be correct, it is equally significant to note that we have never limited the election doctrine to cases involving multiple charges. See, e.g., Kendrick, 38 S.W.3d at 568; Brown, 992 S.W.2d at 389. Nor have we limited the election doctrine to cases in which the indictment alleges that the charged offense or offenses occurred over a certain period of time. See Kendrick, 38 S.W.3d at 568. In sum, the concern for jury unanimity and the requirement for an election may arise in any case in which the defendant has been charged with an offense and the evidence indicates that more than one offense was committed.

## MULTIPLE OFFENSES

The majority properly recognizes that the election issue in this case turns on the question of whether there was evidence of multiple offenses of sexual battery. The apparent rationale for the majority's conclusion that there was only one offense is twofold: first, that the relevant statutory provisions allow evidence of multiple acts of "sexual contact" to be used in proving a single offense of sexual battery; and second, that an analysis of the relevant factors in State v. Phillips, 924 S.W.2d 662 (Tenn. 1996) establishes that only one offense of sexual battery was committed. The majority is wrong on both counts.

-2-

**Statutory Analysis**

As the majority discusses, the offense of "sexual battery" is statutorily defined as an "unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances":

> (1) Force or coercion is used to accomplish the act;
>
> (2) The sexual contact is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the contact that the victim did not consent;
>
> (3) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless; or
>
> (4) The sexual contact is accomplished by fraud.

Tenn. Code Ann. § 39-13-505(a) (1997). In addition, "sexual contact" is defined as follows:

> "[T]he intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification."

Id. § 39-13-501(6) (1997). Finally, "intimate parts" include "the primary genital area, groin, inner thigh, buttock or breast of a human being." Id. § 39-13-501(2) (1997).

The majority's statutory analysis of the offense rests entirely upon the fact that the definition of "sexual contact" includes the plural term "parts." Id. § 39-13-501(6) (1997). Relying solely upon this plural term, the majority leaps to the startling conclusion that the prosecution may introduce evidence of multiple acts of sexual contact in proving a single charge of sexual battery regardless of the nature of the contact or the areas of the victim invaded by a defendant. Although the majority claims that this is the "plain" meaning of the statute, such an interpretation means that any act of sexual contact after the initial act of sexual contact would be of no legal consequence. I cannot believe that the legislature intended to allow any defendant to commit multiple acts of sexual contact against a victim and be guilty of but a single offense.

Moreover, the majority overlooks or finds no significance in the fact that the legislature delineated specific areas of the victim in the definition of "intimate parts." See id. § 39-13-501(2) (1997). As one court has said:

> In defining 'intimate parts,' the . . . statute lists five separate protected areas: the genital area, groin, buttocks, anus and breast. We hold that the legislative intent was to protect the victim from intrusions to each enumerated part. Thus, under the facts of this case, which showed distinctly separate touchings of two of the protected areas, defendant was properly convicted and separately sentenced for [two counts]. . . . Separate punishments are sustainable where evidence shows distinctly separate touchings to the different parts.

State v. Williams, 730 P.2d 1196, 1199 (N.M. Ct. App. 1996) (emphasis added). In my view, the statutory definition of "intimate parts" reflects the legislature's intent to provide more protection for victims and not less as the majority believes. Thus, I reject the majority's statutory interpretation that serves as the underlying premise for its holding.

**State v. Phillips**

The majority bolsters its conclusion that the evidence revealed only a single offense of sexual battery by applying the factors set forth in Phillips, which include (1) the nature of the acts; (2) the area of the victim's body invaded by the sexually assaultive behavior; (3) the time elapsed between the discrete conduct; (4) the accused's intent; and (5) the cumulative punishment imposed. 924 S.W.2d at 665. Although I fully agree that the Phillips factors are useful in determining whether there were multiple offenses for the purpose of election, see State v. Kendrick, 38 S.W.3d at 569, I believe that the majority has misapplied the Phillips analysis and has again reached the wrong conclusion.

There is no dispute that the defendant first touched the victim's breast and thereafter touched the victim over the clothes between her legs. Although the record is silent as to the exact time between the two touchings, I believe that a jury could reasonably find that the second touch was purposeful, intentional, and distinct from the first touch. Two separate areas of the victim's body were clearly invaded by the defendant's conduct and neither touch was accidental or incidental to the other touch. It may be inferred from the purposeful and intentional nature of the second touch that it, like the first touch, resulted from a desire for sexual gratification. Finally, although the cumulative punishment factor does not apply in this case since the defendant was convicted of only one count of sexual battery, several courts have upheld multiple convictions in cases similar to this one. State v. Williams, 730 P.2d at 1199; State v. Suarez, 736 P.2d 1040, 1042 (Utah Ct. App. 1987); State v. Rummer, 432 S.E.2d 39, 47 (W. Va. 1993). Accordingly, a complete analysis of the Phillips factors supports a finding that the defendant committed two offenses of sexual battery.

The majority, however, has applied Phillips to conclude that the defendant's conduct consisted of a single offense. Moreover, the majority postulates that there was no evidence of multiple offenses, but rather, evidence of multiple touches that would satisfy an element of the offense, i.e., sexual contact.[1] The majority's view hinges almost entirely on its determination that "little or no time elapsed between the touchings" and that there was no evidence "to indicate a newly formed intent to again seek sexual gratification." The majority fails to consider that the sexual contact was two separate, statutorily protected areas of the victim's body; that each act of sexual contact was separate and distinct from the other; that neither act of sexual contact was accidental or incidental to the other; and that a jury could reasonably find that either touch was accompanied by a desire to gain sexual gratification.

Moreover, the majority's review of the cold appellate record provides little or no guidance as to how it arrived at its conclusion or how the analysis is to be applied in future cases. How short is a period of "little or no" time? How many acts of sexual contact may a defendant commit against a victim in a given period of time and be guilty of but one offense? What evidence does the majority rely upon to conclude that acts of sexual contact occurred "quickly and virtually simultaneously?" What factors, other than the amount of time, has the Court looked to with regard to the element of sexual gratification? These questions are unanswered. The majority instead focuses entirely upon the short amount of time that elapsed during the offense and gives no apparent significance to the remaining factors under Phillips. Contrary to the majority's assertion, I am not misstating its holding; I simply find it to be erroneous.

Finally, although the majority surprisingly asserts that dual convictions under the facts of this case would be barred by double jeopardy principles, I once again note that other jurisdictions have held that multiple punishments are appropriate where multiple convictions are based on facts similar to the present case. See State v. Williams, 730 P.2d at 1199; State v. Suarez, 736 P.2d at 1042; State v. Rummer, 432 S.E.2d at 47. The majority's view, which focuses solely upon the passage of time, in effect revives the "single transaction" or "same criminal episode" analysis for applying double jeopardy principles. This analysis was rejected in Phillips.

Although it contends it is following "well-established" law, the majority cites no published Tennessee cases that are on point. Instead, it relies primarily upon an intermediate court opinion, State v. Pelayo, 881 S.W.2d 7 (Tenn. Crim. App. 1994), and several unpublished Court of Criminal Appeals opinions that were decided before our decision in Phillips. The reliance on Pelayo is further misplaced in that it involved the offense of aggravated assault, the statutory provisions for which do not delineate or mention specific areas of the victim's body. See State v. Williams, 730 P.2d at 1199. Despite the absence of controlling authority in Tennessee, the majority ignores similar cases

---

[1] As I have previously stated, the majority's purported statutory basis for this alleged distinction is misplaced. Moreover, the majority's conclusion is tantamount to finding that the offense of sexual battery is a continuing offense. Indeed, the majority goes on to rely upon State v. Adams, 24 S.W.3d 289 (Tenn. 2000), in which this Court held that election was not required for a continuing offense. If the majority is of the opinion that sexual battery is a continuing offense as a matter of law, it has cited no authority in support of such a conclusion.

decided by courts in our sister jurisdictions and instead criticizes this dissent for its reference to those cases.

## CONCLUSION

Accordingly, since in my view there was evidence of two offenses of sexual battery, it follows that under Tennessee law the prosecution was required to elect which offense it relied upon for the sexual battery conviction.[2] As we noted in State v. Shelton, a failure to elect implicates the constitutional right to a unanimous verdict and is, therefore, subject to constitutional harmless error analysis. 851 S.W.2d at 138. I would initially emphasize that the prosecution's duty to elect is well-established and that this Court has repeatedly stated that the purpose of election is to preserve the constitutional right to a unanimous jury verdict. In this case, the jury was presented with two offenses of sexual battery based on two acts of sexual contact that occurred in two separate and distinct statutorily protected areas of Smith's body. Because of the State's failure to elect the offense it relied upon for the conviction, it cannot be determined whether the jury was unanimous in its verdict. The State has, therefore, failed to show that the error was harmless beyond a reasonable doubt.

In my view, the majority has misapplied existing precedent and statutory law and has created a muddled analysis that, as applied to the offense of sexual battery, permits a defendant to commit numerous acts of sexual contact against a victim with no criminal consequence. I would hold that there was evidence from which the jury could reasonably find two offenses of sexual battery and that the prosecution was therefore required to elect which offense it relied upon to establish the conviction. Moreover, the prosecution's failure to follow this well-established requirement denied the defendant his constitutional right to a unanimous jury verdict in violation of article I, § 16 of the Tennessee Constitution and requires a new trial on this offense. Finally, I am authorized to state that Justice Holder joins in this concurring and dissenting opinion.

_____
E. RILEY ANDERSON, CHIEF JUSTICE

---

[2] I would lastly note that the election cases cited as authority by the majority apply only if one accepts the majority's faulty premise that there was but a single offense in this case, which I obviously do not. In both State v. Cribbs, 967 S.W.2d 773 (Tenn. 1998) and State v. Lemacks, 996 S.W.2d 166 (Tenn. 1999), the issue concerned multiple theories for which election is not required and not multiple offenses for which election is required. Finally, as I noted earlier, the Court in State v. Adams, 24 S.W.3d 289 (Tenn. 2000), simply held that election was not required for a continuing offense.