# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 14, 2004

## STATE OF TENNESSEE v. WILLIAM F. CARTWRIGHT

**Appeal from the Criminal Court for Putnam County**
**No. 01-0641     Lillie Ann Sells, Judge**

---

**No. M2003-00483-CCA-R3-CD - Filed May 10, 2004**

---

The defendant, William F. Cartwright, appeals as of right from his convictions by a jury in the Putnam County Criminal Court for possession with intent to deliver one-half gram or more of cocaine, a Class B felony, and simple possession of cocaine, a Class A misdemeanor.[1] The trial court sentenced him as a standard offender to concurrent sentences of nine years for possession of one-half gram or more of cocaine with intent to deliver and eleven months, twenty-nine days for simple possession of cocaine. However, the trial court ordered these convictions merged. The petitioner contends (1) that the evidence is insufficient to support his conviction for possession with intent to deliver one-half gram or more of cocaine, (2) that the trial court erred in not requiring the state to elect which offense it was prosecuting, and (3) that his convictions for possession with intent to deliver one-half gram or more of cocaine and for simple possession of cocaine violate double jeopardy. We hold that the evidence is sufficient and that the trial court did not err by not requiring the state to elect between offenses with regard to his cocaine convictions. We also hold that although the trial court ordered the cocaine convictions to be merged, it should have entered only one judgment of conviction and noted the merger of the counts in that judgment. We vacate the judgments and remand the case for entry of a single judgment of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Vacated;
Case Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

Edwin G. Sadler, Cookeville, Tennessee, for the appellant, William F. Cartwright.

---

[1] The defendant was also convicted of evading arrest and driving on a suspended license. Given the fact that the notice of appeal does not mention multiple judgments and the issues raised relate solely to the cocaine offenses, we assume no appeal has been taken regarding these convictions.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Senior Counsel, Office of the Attorney General; William Edward Gibson, District Attorney General; and David Alan Patterson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Officer Ronald Franklin of the Cookeville City Police Department testified that on April 11, 2001, he saw the defendant stopped at a stop sign in a 1986 gray Oldsmobile. He said he was aware that the defendant did not have a valid driver's license. He said he turned his car around, activated his blue lights and siren, and pursued the defendant through a construction site. He said the defendant accelerated and stopped only when construction work prevented him from continuing. He said the defendant pulled into a driveway and waited for him. He said he approached the defendant and told the defendant that he knew he did not have a driver's license. He said he told the defendant to walk with him to his patrol car in order to issue the defendant a citation.

Officer Franklin testified that the defendant began to walk toward his patrol car and then went back to his own car, stating that he needed to retrieve something. He said that he saw the defendant reach for something in the passenger's seat and that he drew his gun in response to the defendant. He said he saw the defendant holding a plastic bag containing a white substance that was approximately the size of a golf ball. He said that although he had ordered the defendant to stop, the defendant ran away. He said he pursued the defendant but lost sight of him for about thirty seconds. He said that when he found the defendant, he again ordered him to stop, which he did. Officer Franklin said, though, that the defendant did not have the white substance after he apprehended him. He said he searched the defendant's car and found seventy dollars. He said that later, Officer Mitch Harrington's dog, Speedy, found a white substance buried in a flower bed along the route the defendant had taken when he ran from Officer Franklin.

On cross-examination, Officer Franklin testified that they weighed the white substance and found that it was thirty-two grams. He acknowledged that when he sent it to the Tennessee Bureau of Investigation's (TBI) Crime Lab, their report indicated that the white substance was cocaine but that it weighed only 25.5 grams. He said that when he mailed the cocaine to the TBI lab, he accidentally wrote the wrong name on the package. He also acknowledged that the cocaine he received back from the TBI had a brownish color. He said the cocaine that Speedy found was actually crack cocaine. He said an "eight ball" of crack cocaine is about 3.5 grams and is usually shared by two or three people in a day. On redirect-examination, Officer Franklin testified that the cocaine that they recovered was more cocaine than he had seen before. He said that no drug paraphernalia was found on the defendant or in his car and that people who use small amounts of cocaine usually have drug paraphernalia with them.

Jack Loyd Payne testified that he is employed by Highways, Inc. and was working as a "flagman" for them on April 11, 2001, when the defendant drove past him. He said he was holding a stop sign and warning drivers to drive slowly through the construction area. He said he heard the defendant's car drive past him quickly and then heard the police in pursuit. He said that he first saw

-2-

the defendant and the policeman when they were parked in a driveway and that he saw the defendant run from the policeman. He said he told the defendant to stop in order to avoid being shot by the police. He said the defendant stopped and was apprehended by the police. He said that a couple hours later, a man resembling the defendant returned to the area where the chase occurred and appeared to be looking for something. He said he believed this man was the defendant. On cross-examination, he acknowledged that he was not certain that the defendant was the person who returned and appeared to be looking for something. He said that the man who returned harassed him but that he refused to talk to the man.

Officer Mitch Harrington, a K-9 officer with the Cookeville City Police Department, testified that he and his dog, Speedy, were called to search for drugs after the defendant was arrested on April 11, 2001. He said Speedy had tied for first place in a finding "lost articles" competition in which over two thousand dogs had competed. He said he took Speedy to the defendant's car in order to allow Speedy to catch the defendant's scent. He said Speedy followed the defendant's escape route and later began digging in a flower bed. He said that Speedy found cocaine in the flower bed but that no drug paraphernalia was found.

Special Agent William Stanton, Jr., a forensic scientist for the TBI, testified that the white substance sent to him by Officer Franklin was cocaine and weighed 25.5 grams. He said that he weighed the cocaine without the plastic baggie that was sent to him and that if he weighed the cocaine in the baggie, it may have weighed three to four more grams.

Officer Scott Winfree of the Cookeville City Police Department testified that he used to work undercover in the Drug Task Force, buying crack cocaine from drug dealers. He said an eight ball of crack cocaine weighed about 3.5 grams and sold for $250 to $300 dollars. He said that one dose of crack cocaine was about one-half gram and that people might smoke several times in one day. He said he had never purchased twenty-five grams of crack cocaine because even dealers usually did not have that large of a supply and because the Drug Task Force did not have enough money to purchase twenty-five grams of crack cocaine. He said that people buying cocaine on the street usually had drug paraphernalia. On cross-examination, Officer Winfree testified that if a person smokes an eight ball of crack cocaine every day, 25.5 grams would be an eight-day supply. He acknowledged that a drug dealer will often carry scales and extra plastic bags and may drive a nice car. He said that in his experience, someone who has twenty-five grams of cocaine was going to break the cocaine into smaller portions and sell it. Upon questioning by the trial court, Officer Winfree testified that the cocaine found by Speedy would cost between $1600 and $2500.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his conviction for possession of one-half gram or more of cocaine with intent to deliver because no evidence was presented at trial showing that he intended to deliver the cocaine to anyone. The state contends the evidence is sufficient. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. <u>See</u> <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. <u>See</u> <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997).

Tennessee law prohibits a person from knowingly possessing cocaine with an intent to deliver it. T.C.A. § 39-17-417(a)(4). With regard to the defendant's insufficiency claim, T.C.A. § 39-17-419 provides the following:

> It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of a controlled substance or substances that the controlled substance or substances so exchanged were possessed not with the purpose of selling or otherwise dispensing in violation of the provisions of § 39-17-417(a). Such inferences shall be transmitted to the jury by the trial judge's charge, and the jury will consider such inferences along with the nature of the substance possessed when affixing the penalty.

Viewing the evidence in the light most favorable to the state, the evidence shows that the defendant had a large amount of cocaine and intended to deliver it to others. Officer Franklin testified that when he stopped the defendant, the defendant ran from him after retrieving the cocaine from his car. He said that when he apprehended the defendant, the cocaine was missing. He said he did not find any drug paraphernalia on the defendant or in his car. Jack Payne testified that a man he believed was the defendant returned to the area where the defendant had run from Officer Franklin and was looking for something. Special Agent Stanton testified that the cocaine weighed 25.5 grams. Officer Winfree testified that one dose of crack cocaine was about one-half gram and that 25.5 grams of cocaine was more than he had been able to buy during his time as an undercover agent. He said that in his experience, anyone with that much cocaine intended to break it up and sell it to others. He also said that people buying cocaine for personal use usually had drug paraphernalia with them. He said that the cocaine confiscated from the defendant would cost between $1600 and $2500 dollars.

The testimony reflects that 25.5 grams of crack cocaine is a large amount and unlikely to be used by just one person. Moreover, the defendant's actions on April 11, 2001, do not reflect that he was under the influence of crack cocaine. In addition, no drug paraphernalia was found on the defendant or in his car. <u>See</u> <u>State v. Chearis</u>, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999)

(holding that 1.7 grams of crack cocaine, no drug paraphernalia, and baking soda was sufficient evidence for a jury to find sufficiency for an intent to deliver). We conclude that in the light most favorable to the state, the circumstances of this case, including the volume of crack cocaine found in the flower bed and the officers' testimony, support the defendant's conviction for possession with intent to deliver one-half gram or more of cocaine.

## II. ELECTION OF OFFENSES

Although the defendant does not present it as a separate issue, he contends that the trial court erred in not requiring the state to elect between the offenses of possession of cocaine with intent to sell and possession of cocaine with intent to deliver. The state does not specifically respond to this contention.

When the state charges a defendant with one offense but produces evidence of multiple offenses, the doctrine of election requires the state to elect the particular offense for which it seeks a conviction. State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999). The doctrine enables the defendant to prepare for a specific charge, protects the defendant against double jeopardy, and, most importantly, ensures that jurors deliberate over and render a verdict based upon the same offense. Id. In the present case, however, allowing the state to prosecute the defendant for possession of cocaine with the intent to sell and the intent to deliver did not risk different jurors basing their individual determinations on different sets of facts. "When the evidence does not establish that multiple offenses have been committed . . . the need to make an election never arises." State v. Adams, 24 S.W.3d 289, 294 (Tenn. 2000). The cocaine charges in the present case stem only from the incident involving Officer Franklin and the defendant. The jury was not required to make findings from multiple criminal acts to determine if the defendant was guilty of the sale or the delivery of cocaine. We conclude that the trial court did not err by failing to require the state to elect as to whether the defendant possessed cocaine with the intent to sell or with the intent to deliver.

## III. DOUBLE JEOPARDY

The defendant asserts that his convictions for simple possession of cocaine and possession with intent to deliver one-half gram or more of cocaine violate the double jeopardy clauses of the United States Constitution and the Tennessee Constitution and that we should order an acquittal for the cocaine convictions. The defendant was indicted in separate counts for possession of cocaine with the intent to sell and possession of cocaine with the intent to deliver. Relative to the possession with intent to sell cocaine, the jury convicted the defendant of the lesser included offense of possession of cocaine. He contends that because both charges stem from the same evidence, his convictions for simple possession and possession with intent to deliver are unconstitutional. The state contends that the trial court gave the defendant the appropriate relief when it merged the two convictions. We agree with the state in part, but we believe that the record incorrectly retains separate judgments of conviction for the cocaine counts.

The double jeopardy clauses of both the United States and Tennessee Constitutions state that no person shall be twice put in jeopardy of life or limb for the same offense. U.S. Const. amend. V; Tenn. Const. art. I, § 10. The clause has been interpreted to include the following protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969); State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996). It is the last protection that is of interest in this case.

The state concedes that the defendant's convictions for both simple possession of cocaine and possession with intent to deliver cocaine are based on the same evidence and, therefore, violate double jeopardy. The state argues, however, that the proper remedy is merger. We agree that under the circumstances of this case, double jeopardy principles prohibit convictions for both simple possession and possession with intent to deliver. We also agree with the state that this does not require us to follow the defendant's request to order an acquittal of the cocaine convictions.

A dismissal is not the only legitimate option available when double jeopardy principles are violated. In State v. Addison, 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997), this court stated that:

> there is no need to "dismiss," "vacate," or "strike," a particular "conviction" if what is meant by the term "conviction" is the return of the jury verdict of guilt. Rather, the jury verdict stands as a legitimate finding of fact and law which the trial court should preserve by merging the same offense counts into one judgment of conviction . . . that notes the merger of counts with each other. . . . Such a merger and imposition of a single judgment of conviction protects against double jeopardy and preserves the validity of the jury verdicts for future avoidance of problems related to unnecessarily dismissed "charges" or "convictions." See, e.g., State v. Davis, 613 S.W.2d 218, 221 (Tenn. 1981).

In the present case, the trial court intended to merge the convictions, stating that only the defendant's conviction for possession with the intent to deliver one-half gram or more of cocaine would remain. A merger avoids a double jeopardy problem while protecting the jury's findings. See State v. Howard, 30 S.W.3d 271, 275 (Tenn. 2000). However, the trial court incorrectly entered separate judgments of conviction including separate sentences. The mergers should result in only one judgment of conviction with only one sentence.

Based upon the foregoing and the record as a whole, we affirm the convictions but vacate the judgments of conviction and remand the case for entry of a single judgment of conviction.

_____
JOSEPH M. TIPTON, JUDGE