IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 8, 2020

**STATE OF TENNESSEE v. TERRY WAYNE HENSON**

**Appeal from the Circuit Court for McNairy County**
**No. 3671      J. Weber McCraw, Judge**

_____

**No. W2019-00462-CCA-R3-CD**

_____

The Defendant, Terry Wayne Henson, was convicted by a McNairy County jury of two counts of rape of a child, a Class A felony; one count of incest, a Class C felony; and one count of violation of the sex offender registry, a Class E felony. He was sentenced by the trial court to an effective term of thirty-five years at 100% in the Department of Correction. On appeal, he challenges the sufficiency of the evidence in support of his child rape and incest convictions, arguing that the State failed to prove that the alleged offenses occurred during the time frame set out in the indictment and that there was insufficient proof of penetration of either victim. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL AND NORMA MCGEE OGLE, JJ., joined.

Ross Mitchell, Savannah, Tennessee, for the appellant, Terry Wayne Henson.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Mark E. Davidson, District Attorney General; and Lisa Miller, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This case arises out of the Defendant's sexual abuse of his eight-year-old biological daughter, S.M,[1] and S.M.'s nine-year-old half-sister, A.G.H., during an October weekend the two girls spent with the Defendant at his house trailer just prior to Halloween of 2016. The girls reported the abuse to their sister-in-law immediately after the weekend visit and a short time later to a law enforcement officer and a sexual assault nurse examiner. The Defendant was subsequently indicted by the McNairy County Grand Jury with two counts of rape of a child, one count of incest, and two counts of violation of the sex offender registry requirements. The State, however, dismissed one of the counts of violation of the sex offender registry prior to the Defendant's October 9, 2018 trial.

The State's first witness at trial was Officer Dena Heathcock of the Jackson Police Department, formerly employed as a patrol officer with the McNairy County Sheriff's Department, who testified that on October 30, 2016, while in her former position, she was dispatched to meet with the victims and their mother at the courthouse/jail complex in response to a "[f]ondling" call. She said she took the victims' statements and noted in her report that A.G.H. had a bruise on her right breast. On cross-examination, she acknowledged that she could not recall any specific details about the bruise. On redirect examination, she recalled that there was one other person, "Brandi," present with the victims and their mother when she met with them at the complex.

Brandi Miller, the victims' former sister-in-law, testified that A.G.H. made a revelation to her about sexual abuse after they picked her up from her visit with the Defendant. She stated that they immediately reported the abuse to law enforcement, driving first to the Hardin County jailhouse and from there to the McNairy County Courthouse complex to speak with a female officer. She was present when A.G.H. showed the officer her breast, and she observed that the breast was red. On cross-examination, she denied that she coached the victims on what to say to the officer.

Sexual Assault Nurse Examiner Mary Jane Cole, who examined both victims in the early morning hours of October 31, 2016, testified that S.M. reported that her father had "pinched [her] butt" and that he "puts his nu-nu, his bad part, in [her] nu-nu." S.M. showed her what she meant by "nu-nu" by pointing to the crotch area of a toy and to her own crotch area. Her physical examination of S.M., which involved gently pulling apart the outer lips, or labia majora, of S.M.'s vulva, revealed mild redness in S.M.'s external genitalia.

Nurse Cole testified that A.G.H. reported that the Defendant: "put his thingy in [her] butt"; "put his thingy to [her] front part," which hurt; put his finger in her "front private"; put his hand on her breast, which caused her pain; and kissed her on the mouth. [86] She asked what A.G.H. meant by the Defendant putting his finger in her private, and A.G.H.

---

[1] In accordance with the policy of this court, we refer to the minor victims by their initials only.

told her that the Defendant's fingers moved "in and out[.]" [87, line 1] Her physical examination of A.G.H. was limited due to A.G.H.'s extreme discomfort and pain, even after she applied Lidocaine jelly, but she was able to observe "[s]evere redness throughout . . . [A.G.H.'s] whole vestibule, around the urethra, around the hymenal tissue, in the labia minora, on the outside, the labia majora."

On cross-examination, she testified that she did not see any acute injury on S.M. and saw no noticeable redness on or around A.G.H.'s buttocks. She said she collected two buccal swabs from S.M., two buccal swabs from A.G.H., two swabs from around the outside of A.G.H.'s anus, and two swabs from A.G.H.'s labia majora. She had no information of whether any foreign DNA was found on any of the swabs. She acknowledged that either poor hygiene or an infection could account for the redness in A.G.H.'s genital area but said that the child's mother gave no indication that A.G.H. had any prior issues with irritation of her genitalia. She acknowledged that she was unable to determine whether penetration had occurred in either child.

Ten-year-old S.M. testified that the Defendant, her father, touched her in a bad way one weekend when she was staying with him at his house and watching the movie "Bad Teacher." Referring to the Defendant's penis as his "bad part," she said that the Defendant, who was lying down on the couch, unzipped his pants, pulled out his penis, and moved her so that she was sitting on top of his penis. The Defendant did not remove her clothes but he pushed his penis several times against her buttocks. Although she was not clear in her testimony, she indicated that the Defendant either pushed his penis through the leg opening of her panties into her vagina or her anus or pushed his penis, covered by the material of her panties, into her vagina or her anus, testifying, "My clothes was on but you can feel it go through." She further testified that it felt as if the Defendant's penis was inside of her and that it was "coming into [her] butt." His penis felt "[l]ike a mountain," and the Defendant was "moving everywhere." The Defendant's penis hurt her and she asked him to stop, but he continued. She felt "[a] little bit of pee" coming out of his penis and "into [her] butt" before the Defendant finally stopped. She said she told her sister-in-law, Brandi, about what the Defendant had done and that she later went to the Carl Perkins Center for the Prevention of Child Abuse where a woman examined her.

On cross-examination, S.M. testified that the Defendant removed both her t-shirt and her pants, leaving her underwear on. She reiterated that the incident happened at the Defendant's house. She could not recall what time of day it occurred or how old she had been at the time. She said no one else was in the home at the time.

On redirect examination, S.M. testified that a similar incident happened more than once and agreed that she might have been confusing the two incidents when she testified on direct examination that her clothes were on and on cross-examination that her clothes

were off. She also agreed that her sister was at home on some of the occasions when "bad things happened" at the Defendant's home.

Lieutenant Brad Johnson of the McNairy County Sheriff's Department identified a certified copy of the Defendant's Georgia conviction for child molestation, as well as the "Tennessee Sexual Offender/Violent Sexual Offender Registration/Verification/Tracking Form, signed by the Defendant on August 8, 2016, in which the Defendant acknowledged receipt of the registry rules he was required to follow, including the prohibition against being alone with a minor.

Eleven-year-old A.G.H. testified that on an overnight visit with the Defendant at his house trailer in Michie just before Halloween, the Defendant told her to go into S.M.'s bedroom, where he pushed her down on the bed, pulled down her pants, and touched her breast and her private part with his finger. She said the Defendant put his fingers inside her, which made her feel "awkward" and "weird." The Defendant then unzipped his pants, pulled out his private part, pushed it inside her private part, and rubbed against her, which hurt her. The Defendant also tried to put his private part inside her buttocks, but she squeezed her buttocks together to stop him.

A.G.H. testified that she asked the Defendant to stop, but he continued until his girlfriend, who was cooking in the kitchen, called for him to "come and eat." She said S.M. was playing with dolls in the living room at the time. She identified on anatomical drawings what she meant by her and the Defendant's respective private parts. She testified that the Defendant dropped her and S.M. off at the courthouse at about 8:30 p.m., where their mother and Brandi picked them up. When she got home, she told Brandi and her brother what had happened.

On cross-examination, A.G.H. testified that at the time of the incident, she was wearing leggings and no underwear because her underwear was dirty. She said the Defendant pulled her leggings down to her knees and unzipped his pants. The Defendant was not wearing a shirt or any underwear. The Defendant pinched her breast by sliding his arm underneath her shirt. She said the incident occurred in the evening approximately two years earlier, when she was nine. On redirect examination, she testified that the incident happened on the same weekend in which she talked to a police officer and went to a hospital for a physical examination.

The victims' mother, called as a witness by the defense, testified that her romantic relationship with the Defendant had ended approximately three years before the date of trial. She acknowledged having told the judge in the general sessions court that she did not believe that the Defendant would harm the victims. She stated, however, that she now believed the victims' allegations. On cross-examination, she testified that although she did

- 4 -

not believe the victims when she first learned of the abuse, she had immediately taken them to be interviewed by law enforcement and to the hospital for physical examinations.

The forty-nine-year-old Defendant testified that he had never been alone with A.G.H. and denied he had ever inappropriately touched either victim or behaved inappropriately around them. On cross-examination, he testified that he had been alone with S.M. and reiterated that he had never been alone with A.G.H., although he had been in the room with only A.G.H. and S.M. when S.M. was asleep.

Lynn Baker, owner of a construction company and the Defendant's employer, testified that he had observed that the victims appeared to be "crazy" about the Defendant. He described the Defendant as an excellent employee and said that the Defendant informed him of his Georgia criminal conviction on the day that he hired him.

Following deliberations, the jury found the Defendant guilty of the offenses charged in the indictment.

## ANALYSIS

On appeal, the Defendant challenges the sufficiency of the evidence in support of his child rape and incest convictions. Specifically, the Defendant argues that "the State failed to prove that the offenses occurred on or between the dates included in the indictment" and failed to prove the essential element of penetration necessary to sustain both the incest and the rape of a child convictions.

When the sufficiency of the convicting evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). It is not the role of this court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the

burden of demonstrating that the evidence is insufficient." <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982).

In order to sustain the convictions for rape of a child, the State was required to prove beyond a reasonable doubt that the Defendant unlawfully sexually penetrated S.M. and A.G.H, that the victims were more than three years old but less than thirteen, and that the Defendant acted intentionally, knowingly, or recklessly. Tenn. Code Ann. § 39-13-522. "'Sexual Penetration' means sexual intercourse, . . . or any other intrusion, however, slight, of any part of a person's body or of any object into the genital or anal openings of the victim's . . . body, but emission of semen is not required[.]" Tenn. Code Ann. § 39-13-501 (7).

To sustain the incest conviction, the State was required to prove beyond a reasonable doubt that the Defendant engaged in sexual penetration, as defined above, with S.M. and that he knew that S.M. was his natural child. Tenn. Code Ann. § 39-15-302(a)(1).

The Defendant first argues that the evidence is insufficient because the State failed to prove that the offenses occurred on a date between October 29 and October 30, 2016, as charged in the indictment. The date is not, however, an essential element of these offenses. <u>See</u> <u>State v. Brown</u>, 992 S.W.2d 389, 392 (Tenn. 1991) ("The State is not required to prove that an offense was committed on a specific date unless the date is an element of the crime or essential to proving the offense.") (citation omitted). Regardless, there was ample evidence at trial that the offenses occurred during the victims' October 29-30, 2016 overnight visit with the Defendant. A.G.H. testified that the incident occurred during their overnight visit with the Defendant at Halloween approximately two years prior to trial, and both victims indicated that they informed their sister-in-law about the abuse when they returned from that visit. The victims' mother and sister-in-law testified that they learned of the abuse on October 30, 2016, following the victims' overnight visitation with the Defendant, and that they immediately reported it to law enforcement. The testimony of the law enforcement officer who met with the victims and the nurse who later examined them established that the victims reported the abuse to the officer in the late evening of October 30 and were examined by the nurse in the very early morning hours of October 31, 2016. Thus, contrary to the Defendant's contention, there was proof at trial to show that the offenses occurred during the time frame charged in the indictment.

The Defendant also argues that there was insufficient proof of penetration, citing, among other things, the lack of DNA evidence or other definitive physical findings by the nurse. However, in order to prove penetration, the State needed only to present evidence by which the jury could find that the Defendant's fingers or penis slightly intruded into the genital or anal openings of the victims. Sexual penetration occurs "'if there is the slightest penetration of the sexual organ of the female. . . . It is not necessary that the vagina be

entered or that the hymen be ruptured; the entering of the vulva or labia is sufficient.'" State v. Bowles, 52 S.W.3d 69, 74 (Tenn. 2001) (quoting Hart v. State, 21 S.W.3d 901, 905 (Tenn. 2000)). S.M. testified that she felt the Defendant's penis coming into her "butt" and that she could feel "pee" coming out of the Defendant's penis into her "butt." A.G.H. testified that the Defendant put his fingers and his penis inside her front private part. Both victims provided similar accounts to the sexual assault nurse examiner, whose physical examinations revealed mild redness in S.M.'s genital area and severe redness throughout A.G.H.'s. This was sufficient evidence from which the jury could find beyond a reasonable doubt that the Defendant sexually penetrated each victim. We conclude, therefore, that the evidence, when viewed in the light most favorable to the State, is sufficient to sustain the Defendant's convictions.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE