# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned On Briefs November 20, 2013

## STATE OF TENNESSEE v. GRICO CLARK, JORDAN CURRY and DEANGELO WHITE

**Appeal from the Circuit Court for Madison County**
**No. 12-78   Roy B. Morgan, Jr., Judge**

---

**No.  W2012-02666-CCA-R3-CD  - Filed February 7, 2014**

---

Appellants, Grico Clark, Jordan Curry, and Deangelo White, were each indicted by the Madison County Grand Jury for two counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, one count of employing a firearm during the commission of a dangerous felony, and one count of evading arrest.  Deangelo White was also indicted for one count of possession of more than one-half ounce of marijuana with the intent to sell and one count of possession of more than one-half ounce of marijuana with intent to deliver.  After a jury trial, Clark, Curry, and White were found guilty of two counts of especially aggravated kidnapping, two counts of aggravated robbery, and one count of aggravated burglary.  Clark and Curry were found guilty of employing a firearm during the commission of a dangerous felony.  White was found not guilty of the firearm charge and convicted of the lesser included offenses of simple possession of marijuana.  The trial court sentenced Clark and Curry each to effective sentences of forty-four years and White to an effective sentence of forty years.  The trial court denied motions for new trial. In this consolidated appeal, we are asked to determine whether under the holding of *State v. White*, 362 S.W.3d 559 (Tenn. 2012), the evidence supported convictions for both especially aggravated kidnapping and aggravated robbery.  Additionally, we must determine whether the State was required to make an election of offenses and whether the trial court properly imposed consecutive sentencing.  After a review of the record and applicable authorities, we determine that the trial court properly instructed the jury as mandated in *White* and that the evidence supported convictions for both especially aggravated kidnapping and aggravated robbery.  Further, we determine that the State was not required to elect offenses.  In addition, the trial court did not abuse its discretion in sentencing White to an effective sentence of forty years and Clark and Curry each to an effective sentence of forty-four years. Accordingly, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT. JR., and D. KELLY THOMAS, JR., JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, Grico Clark; George Morton Googe, District Public Defender and Jeremy B. Epperson, Assistant Public Defender, Jackson, Tennessee for the appellant, Jordan Curry; and Anna B. Cash, Jackson, Tennessee, for the appellant, Deangelo White.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Jerry Woodall, District Attorney General; and Jody Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

According to the evidence presented at trial, Shannell Henning and Leon Jackson, the victims, went to McDonald's in the early morning hours of July 11, 2011. When they returned to Ms. Henning's apartment at 1206 Parkwood Trace in Jackson, Tennessee at around 2:00 a.m., they were approached by three men, at least two of whom were armed with guns. One of the men informed Ms. Henning and Mr. Jackson at gunpoint that they were being robbed. Ms. Henning dropped her purse, keys, and food. She was so scared for her life that she actually began gasping for air. The men ordered the victims to walk toward their apartment or they would be killed.

Ms. Henning walked toward the apartment, flanked by Curry and Clark. White followed them. When they reached the door to the apartment, Curry handed her the keys to open the door. The apartment was equipped with an alarm. The alarm was activated but did not go off. Curry told Ms. Henning to "deactivate the alarm." She complied.

As the men entered the apartment, they ordered Ms. Henning to sit on the floor. Mr. Jackson was taken to the kitchen where the men took his money, and Curry restrained him by duct-taping him to a kitchen chair. White and Clark went to the bedrooms to look for more money.

After returning empty handed, the men discussed their next plan. Curry stated that he would kill Ms. Henning. At that point, Ms. Henning felt trapped and was panicked. She felt the need to formulate some type of plan to get out of the apartment to safety. The men had

already taken her purse, which contained an EBT card and about $500 in cash. She tried to convince the men that she had more money and that it was located down the street in another apartment. Curry did not believe Ms. Henning; Clark and White wanted to see if there was more money.

Clark and White told Ms. Henning to "[g]et up bitch. Let's go get [the money]." They took Ms. Henning out of the apartment at gunpoint, escorting her to her car. Ms. Henning drove the car while Clark sat in the passenger seat and White sat in the back seat. As they drove to another apartment complex about five minutes away, Ms. Henning was continually held at gunpoint. At some point during the drive, White got a telephone call from another male. After the call, White told Clark that they were not supposed to leave the apartment.

When they arrived at the apartment, White and Clark gave Ms. Henning five minutes to go inside and return with money or they would "shoot up" the apartment. Ms. Henning pounded on the door and was allowed inside, where she immediately called the police. She watched outside and saw police arrive soon thereafter. Clark and White fled from her car on foot. Both Clark and White were eventually apprehended by police after a foot chase. They located an automatic pistol and a ten dollar bill in the area where Clark and White were running. White was found with about twenty-five grams of marijuana in his pocket.

While Ms. Henning drove Clark and White to the other apartment, Curry stayed behind with Mr. Jackson. Curry continued to search for money and when he found none, hit Mr. Jackson in the head.

About thirty minutes after Clark and White left with Ms. Henning, Curry got a phone call. After the call, Curry was frantic, looking for a way out of the apartment. He actually asked Mr. Jackson to "help him out." He eventually tried to escape. Mr. Jackson could hear police ordering Curry to the ground. After a short chase, Curry was apprehended. He was armed with an assault rifle, complete with a clip containing extra rounds. Curry was wearing latex gloves and had about $550 in cash and Ms. Henning's EBT card in his possession. Mr. Jackson was found duct-taped to a chair inside the apartment. He had a large knot on his head.

At trial, both Mr. Jackson and Ms. Henning were able to identify Clark, White, and Curry.

Clark, White, and Curry were indicted by the Madison County Grand Jury for two counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, one count of employing a firearm during the commission of a dangerous

felony, and one count of evading arrest. White was also charged with one count of possession of more than one-half ounce of marijuana with intent to sell and one count of possession of one-half ounce of marijuana with intent to deliver.

The jury convicted Clark and Curry with two counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, one count of employing a firearm during the commission of a dangerous felony, and one count of evading arrest.

White was convicted of two counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, and one count of evading arrest. He was found not guilty of the firearm charge. White was also convicted of simple possession of marijuana.

At a sentencing hearing, Clark and Curry were sentenced to twenty-two years for each count of especially aggravated kidnapping, ten years for each count of aggravated robbery, five years for aggravated burglary, six years for possession of a firearm during the commission of a dangerous felony, and eleven months and twenty-nine days. The trial court ordered the aggravated burglary sentence to run consecutively to the possession of a firearm sentence, but concurrently to the remaining sentences. The trial court ordered the two, twenty-two-year sentences for especially aggravated kidnapping to run consecutively to each other and concurrently to the remaining sentences, for a total effective sentence of forty-four years.

White was sentenced to twenty years for each aggravated kidnapping conviction, ten years for each aggravated robbery conviction, five years for the aggravated burglary conviction, eleven months and twenty-nine days for the evading arrest conviction, and eleven months and twenty-nine days for each simple possession conviction. The trial court ordered White's sentences for aggravated kidnapping to be served consecutively to each other but concurrently to the remaining sentences, for a total effective sentence of twenty years.

White, Curry, and Clark filed motions for new trial challenging the trial court's decision to allow the jury to deliberate on both especially aggravated kidnapping and aggravated robbery as well as the sufficiency of the evidence and sentencing. After the denial of their motions for new trial, Clark, White, and Curry appeal. On appeal, the following issues are presented for our review: (1) whether the State was required to elect offenses at trial; (2) whether the evidence was sufficient to support the convictions for both especially aggravated kidnapping and aggravated robbery; and (3) whether the trial court properly ordered partial consecutive sentencing.

*Analysis*

*Sufficiency of the Evidence*

Curry, Clark, and White argue on appeal that the recent case of *State v. White*, 362 S.W.3d 559 (Tenn. 2012), prevents their dual convictions for aggravated kidnapping and aggravated robbery. Specifically, they contend that the underlying motive of their actions was robbery and, as such, any confinement of the victims was merely incidental to and used only to accomplish the robbery. In other words, the confinement arose out of and in furtherance of the robbery and was not related to an independent offense of kidnapping. The State disagrees, pointing out that the trial court properly charged the jury as instructed in *White* and that the proof supported the finding of one or more of the factors enumerated in *White*. Therefore, the State contends that the evidence supports the convictions.

To begin our analysis, we note that when a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris,* 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused pretrial enjoys a presumption of innocence, the verdict of guilty removes this presumption and replaces it with one of guilt. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id*.

The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence. *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 599, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proved, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). As such, all reasonable inferences from evidence are to be drawn in favor of the State. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *See Tuggle*, 639 S.W.2d at 914.

In the case herein, Curry, White and Clark were convicted of two counts of especially aggravated kidnapping and two counts of aggravated robbery. Recently, in *State v. White*, 362 S.W.3d 559 (Tenn. 2012), the Tennessee Supreme Court conducted a comprehensive review of Tennessee's kidnapping statutes and concluded that our legislature did not intend for the kidnapping statutes to apply to instances in which the removal or confinement of a victim is essentially incidental to an accompanying felony, such as rape or robbery, and that the inquiry as to whether the confinement is incidental to an accompanying felony "is a question for the jury after appropriate instructions, which appellate courts review under the sufficiency of the evidence standard as the due process safeguard." *Id.* at 562. The court elaborated as to what constitutes appropriate instructions to the jury:

> Under the standard we adopt today, trial courts have the obligation to provide clear guidance to the jury with regard to statutory language. Specifically, trial courts must ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony. Instructions should be designed to effectuate the intent of the General Assembly to criminalize only those instances in which the removal or confinement of a victim is independently significant from an accompanying felony, such as rape or robbery. When jurors are called upon to determine whether the State has proven beyond a reasonable doubt the elements of kidnapping, aggravated kidnapping, or especially aggravated kidnapping, trial courts should specifically require a determination of whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the alternative, is significant enough, standing alone, to support a conviction. In our view, an instruction of this nature is necessary in order to assure that juries properly afford constitutional due process protections to those on trial for kidnapping and an accompanying felony.

*Id.* at 578. The court made sure to emphasize that it was not creating a new standard for kidnapping but instead was "merely providing definition for the element of the offense requiring that the removal or confinement constitute a substantial interference with the victim's liberty[,]" and that its ruling in the case did not, thus, "articulate a new rule of constitutional law or require retroactive application." *Id.*

The facts at issue in *White* revealed that the defendant hid inside a restaurant at closing, approached a store manager from behind as she was in the women's restroom, knocked her to her knees, removed a set of keys from her arm, and ordered her to remain in the restroom. *Id.* at 562. The defendant then returned to the restroom and forced the manager at gunpoint to accompany him to the employee area where another restaurant employee was attempting to open the store safe. *Id.* After the manager opened the safe, the defendant took a computer monitor, cell phones, and cash, "removed all of the telephones and directed the two women to lie down on the floor and wait eight or nine minutes." *Id.* at 562-63.

When reviewing the evidence, the supreme court concluded that the proof in *White* could be interpreted in different ways and that the issue of whether the removal or confinement of the victim constituted a substantial interference with her liberty was a question of fact for the jury to resolve. *Id.* at 579. In *White,* the jury had been given only the pattern jury instructions on the elements of the offenses, which did not include an instruction that substantial interference with the victim's liberty requires a finding that the victim's removal or confinement was not essentially incidental to the accompanying felony. Therefore, the court concluded that the defendant was entitled to a new trial on the especially aggravated kidnapping charge. *Id.* at 580.

To provide guidance in future cases, the court set forth the following instruction to be issued by trial courts until an appropriate pattern jury instruction is developed:

> To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:
>
> • the nature and duration of the victim's removal or confinement by the defendant;

• whether the removal or confinement occurred during the commission of the separate offense;

• whether the interference with the victim's liberty was inherent in the nature of the separate offense;

• whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;

• whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and

• whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

*Id.* at 580-81.

There is no dispute on appeal that the trial court properly instructed the jury as mandated by the decision in *White*. However, Appellants argue that the proof does not support separate convictions for both especially aggravated kidnapping and aggravated robbery. Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). A robbery becomes aggravated either when the victim is seriously injured or when the defendant "display[s] . . . any article used . . . to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a). Especially aggravated kidnapping is defined as the knowing and unlawful removal or confinement of another "so as to interfere substantially with the other's liberty" and accomplished with a deadly weapon. T.C.A. §§ 39-13-302, -305.

The proof at trial, when taken in a light most favorable to the State, showed that after being approached by the armed men in the parking lot, the victims were taken to Ms. Henning's apartment and held at gunpoint for nearly fifteen minutes while Clark, White, and Curry ransacked the apartment looking for money. The proof further established that Ms. Henning continued to be held against her will, at gunpoint, while Clark and White accompanied her to another apartment in hopes of stealing more money. As Ms. Henning was taken away, Mr. Jackson was duct-taped to a chair in the kitchen of Ms. Henning's apartment and held at gunpoint by Curry. Throughout the ordeal, both victims were threatened with death if they did not cooperate with the perpetrators.

-8-

Given this proof, and the fact that the trial court properly instructed the jury with the instruction and accompanying factors set forth in *White*, there was ample evidence with which the jury could determine that the victims were prevented from summoning help on the basis of their restraint by Appellants. Further, the restraint of the victims, both by gunpoint and duct tape, reduced the risk that Appellants would be detected and greatly increased the risk of harm to the victims. The jury obviously looked at the evidence and determined that the restraint of the victims was not incidental to the kidnapping, but was actually a separate crime. This determination was within the province of the jury. *White*, 362 S.W.3d at 562. Furthermore, the evidence sufficiently established the elements of aggravated kidnapping and the elements of aggravated robbery.

*Election of Offenses*

Next, Clark, White, and Curry argue that the evidence presented at trial showed multiple acts that could have been construed by the jury as being committed by any or all of the Appellants. As a result, the jury verdict could have resulted in duplicity and a lack of jury unanimity. Thus, Appellants argue that the State should have been required to elect the acts upon which each offense was based. The State counters that the proof showed that there were single, separate offenses of both robbery and kidnapping and, therefore, no election was required.

Our supreme court has consistently held that the prosecution must elect the facts upon which it is relying to establish the charged offense if evidence is introduced at trial indicating that the defendant has committed multiple offenses against the victim. *See State v. Kendrick*, 38 S.W.3d 566, 568 (Tenn. 2001); *State v. Brown*, 992 S.W.2d 389, 391 (Tenn. 1999); *State v. Walton*, 958 S.W.2d 724, 727 (Tenn. 1997); *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996); *State v. Shelton*, 851 S.W.2d 134, 137 (Tenn. 1993). The requirement of election serves several purposes: (1) it enables the defendant to prepare for the specific charge; (2) it protects a defendant against double jeopardy; (3) it ensures the jurors' deliberation over and their return of a verdict based upon the same offense; (4) it enables the trial judge to review the weight of the evidence in its role as the thirteenth juror; and (5) it enables an appellate court to review the legal sufficiency of the evidence. *Brown*, 992 S.W.2d at 391.

The requirement of election and a jury unanimity instruction exists even though Appellant has not requested them. *See Burlison v. State*, 501 S.W.2d 801, 804 (Tenn. 1973). Rather, it is incumbent upon the trial court, even absent a request from the defendant, to ensure that the State properly makes an election in order to avoid a "'patchwork verdict' based on different offenses in evidence." *Shelton*, 851 S.W.2d at 137. Moreover, failure to follow the procedures is considered an error of constitutional magnitude and will result in

reversal of the conviction, absent the error being harmless beyond a reasonable doubt. *See State v. Adams*, 24 S.W.3d 289, 294 (Tenn. 2000); *see also Shelton*, 851 S.W.2d at 138.

We conclude that the trial court did not err in failing to require the State to elect offenses. In *State v. Adams*, 24, S.W.3d 289 (Tenn. 2000), our supreme court determined that the State is not required to make an election of offenses when the crime at issue is considered a single, continuous course of conduct. 24 S.W.3d at 294-95. Previous to *Adams*, our supreme court held that kidnapping is a continuous course of conduct. *State v. Legg*, 9 S.W.3d 111, 118 (Tenn. 1999). In this case, both victims were restrained by Appellants until they were rescued by the police. Moreover, as to the aggravated robbery counts, the proof established that Ms. Henning was robbed of her purse, containing her money, EBT card, and cell phone while Mr. Jackson was robbed in the kitchen. The robberies of each victim were clearly distinct acts. Therefore, the State was not required to make an election of offenses in the case at hand.

This issue is without merit.

*Sentencing*

Lastly, Clark, White, and Curry argue that the trial court erred in imposing consecutive sentencing for their convictions for especially aggravated kidnapping and by failing to consider mitigation based upon their age. The State insists that the trial court did not abuse its discretion in sentencing Appellants.

Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Bise*, 380 S.W.3d at 706 n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, a sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute.

As to the length of Appellants's sentences, after a review of the transcript from the sentencing hearing, it is clear that the trial court considered the nature and characteristics of the criminal conduct involved, each Appellant's history and background, the mitigating and enhancement factors, and the principles of sentencing. The trial court did not abuse its discretion in failing to apply mitigating factors.

Under Tennessee Code Annotated section 40-35-115(a), if a defendant is convicted of more than one offense, the trial court shall order the sentences to run either consecutively or concurrently. A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that, "(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high; . . . (6) The defendant is sentenced for an offense committed while on probation . . . ." T.C.A. § 40-35-115(b)(4), (6). When imposing a consecutive sentence, a trial court should also consider general sentencing principles, which include whether or not the length of a sentence is justly deserved in relation to the seriousness of the offense. *See State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). Our supreme court recently held that the standard of appellate review for consecutive sentencing is abuse of discretion accompanied by a presumption of reasonableness. *State v. James Allen Pollard*, No. M2011-00332-SC-R11-CD, _____ S.W.3d _____, 2013 WL 6732667, at *9 (Tenn. Dec. 20, 2013).

Before ordering the defendant to serve consecutive sentences on the basis that he is a dangerous offender, the trial court must find that the resulting sentence is reasonably related to the severity of the crimes, necessary to protect the public against further criminal conduct, and in accord with the general sentencing principles. *See Imfeld*, 70 S.W.3d at 708-09; *State v. Wilkerson*, 905 S.W.2d 933, 938-39 (Tenn. 1995).

## A.  Clark

Clark presented no proof at the sentencing hearing.  At the time of the hearing, he was twenty years old with prior convictions for attempted especially aggravated robbery, a weapons conviction, and several prior juvenile adjudications.  Clark was also on probation at the time he committed the crimes.  At the sentencing hearing, the trial court stated that it imposed consecutive sentences after a determination that Appellant engaged in criminal acts since the age of fourteen without any real, gainful employment and, therefore, was a professional criminal.  Additionally, the trial court stated that Appellant was a dangerous offender and noted that he was on probation at the time of the offense. The trial court made the requisite findings necessary to the imposition of consecutive sentences based upon Appellant's being a dangerous offender.

As stated above, the trial court need only find one criteria to impose consecutive sentences. We have concluded that the trial court correctly found that Clark had an extensive criminal history, was on probation at the time of the offense, and was a dangerous offender.  Thus, as required by *James Allen Pollard*, the "trial court properly articulate[d] reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review. . . ." 2013 6732667, at *9.  Therefore, Appellant's "sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.*  The trial court did not abuse its discretion; this issue is without merit.

## B.  Curry

Curry also chose not to present proof at the sentencing hearing.  At the time, he was on probation for a recent drug possession conviction and had been adjudicated delinquent as a juvenile for the crime of attempted aggravated burglary.

At the sentencing hearing, the trial court stated that it imposed consecutive sentences after a determination that Curry was a dangerous offender and noted that he was on probation at the time of the offense. The trial court noted that the fact that Curry wore latex gloves and had acquired weapons prior to the crime indicated that the crime was pre-planned. The trial court made the requisite findings with regard to the imposition of consecutive sentences based upon Appellant being a dangerous offender.

As stated above, the trial court need only find one criterion to impose consecutive sentences. We have given the trial court's findings a presumption of reasonableness and conclude that the trial court correctly found that Curry was on probation at the time of the offense and was dangerous offender. *James Allen Pollard*, 2013 WL 6732667, at *9. Therefore, the trial court did not abuse its discretion; this issue is without merit.

### C. White

White presented two witnesses at the sentencing hearing. Kevin Harper, White's boss at Pizza Hut, testified that White started working at the restaurant in February of 2010 as a cook. There were never any problems with White at his place of employment. White's mother also testified. She stated that White had a job at the age of sixteen, graduated from high school, and was planning to go to college at Jackson State.

At the sentencing hearing, the trial court stated that it imposed consecutive sentences after a determination that White was an offender with an extensive criminal record and was a dangerous offender with little regard for human life. The trial court noted a juvenile adjudication for domestic assault coupled with the convictions for which White was being sentenced amounted to an extensive criminal record. The trial court also made the requisite findings with regard to the imposition of consecutive sentences based upon Appellant being a dangerous offender.

As stated above, the trial court need only find one criteria to impose consecutive sentences. We have given the trial court's findings a presumption of reasonableness and conclude that the trial court correctly found that White had an extensive criminal history and was dangerous offender. *James Allen Pollard*, 2013 WL 6732667, at *9. Therefore, the trial court did not abuse its discretion and this issue is without merit.

### Conclusion

For the foregoing reasons, the judgments of the trial court are affirmed.

_____

JERRY L. SMITH, JUDGE

-13-