IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 22, 2016 Session


**STATE OF TENNESSEE v. STEVIE MICHAEL IRWIN, JR.**


**Appeal from the Criminal Court for Knox County**
**No. 96977     Jon Kerry Blackwood, Senior Judge**

_____


**No. E2015-01448-CCA-R3-CD – Filed May 11, 2016**

_____


Defendant, Stevie Michael Irwin, Jr., was found guilty of two counts of rape of a child, two counts of attempted rape of a child, one count of aggravated sexual battery, and one count of incest.  On appeal, Defendant challenges the failure of the State to properly elect offenses; the sufficiency of the evidence for the rape and attempted rape convictions; dual convictions for rape of a child in Counts One and Three as violating his right to due process; and his sentence as excessive.  After a review of the record, and in light of the recent supreme court holding in *State v. Qualls*, 428 S.W.3d 1 (2016), we affirm the convictions and sentences.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Robert R. Kurtz, Knoxville, Tennessee, for the appellant, Stevie Michael Irwin, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Senior Counsel; Charme Allen, District Attorney General; and Ashley McDermott, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**


This is Defendant's direct appeal from a Knox County jury's verdict for various sexual offenses committed by Defendant against his minor daughter over a forty-five

month period. The trial imposed an effective sentence of thirty-five years in the Tennessee Department of Correction.

In April of 2011, Defendant was charged in an eight-count presentment by the Knox County Grand Jury with five counts of rape of a child, one count of attempted rape of a child, one count of aggravated sexual battery, and one count of incest for events occurring between February 1, 2007, and October 19, 2010. The charges were based on allegations made by Defendant's daughter, the victim.[1] Specifically, the presentment alleged rape of a child in Count One by virtue of penile/vaginal penetration; rape of a child in Count Two by penile/oral penetration; rape of a child in Count Three by digital/vaginal penetration; rape of a child in Count Four by object/vaginal penetration; attempted rape of a child in Count Five by attempted penile/anal penetration; rape of a child in Count Six by causing the victim's step-brother to engage in penile/vaginal penetration; aggravated sexual battery in Count Six by oral/breast contact; and incest in Count Seven by penile/vaginal penetration of his daughter.

At the time the abuse started, the victim was approximately four years of age. She lived in a trailer with Defendant, her mother, her older step-brother,[2] and her two younger siblings. The victim and the step-brother slept on the couch at the time because the window in the victim's bedroom was broken.

The victim reported the abuse to her mother when she was approximately eight years of age and in the third grade. She did not remember exactly when the abuse started but stated that it happened almost every day for a long period of time. Her mother, in turn, reported the abuse to the Department of Children's Services. The victim was taken to the hospital where an exam was performed. Detective Brian Williams of the Knox County Sheriff's Office was assigned to the case. He interviewed Defendant, the victim, the step-brother, and the mother. After a search of the home, several items were seized: (1) two pairs of girl's panties; (2) men's underwear; (3) bed sheets; (4) a pillow sham; (5) a blanket; (6) a comforter; (7) five bath towels; and (8) a piece of plastic sheeting. Buccal swabs were taken of all four people interviewed.

Jennifer Milsaps, a Special Agent forensic scientist in the serology and DNA unit of the Tennessee Bureau of Investigation Crime Lab in Knoxville, testified at trial. According to Special Agent Milsaps, the results of testing the pair of green panties seized from the house indicated the presence of the DNA of the victim and Defendant in the crotch area. The mother and step-brother were excluded as possible contributors. No other items were submitted for testing. Special Agent Milsaps agreed that DNA could be

---

[1] It is the policy of this Court to protect the identity of the victims of sexual abuse.

[2] The step-brother is approximately four years older than the victim.

transferred from other clothing or from a towel to the panties. The vaginal swabs taken from the victim on the night she made the allegations were negative for the presence of sperm.

The victim was twelve years old at the time of trial. According to the victim, Defendant started the abuse by "touching" her "breasts and private parts" with his hands and mouth. Defendant also touched her vagina, using "his penis," "his fingers," and "his mouth." The victim testified that it went on "for like, a long time" and that her step-brother was often home at the time of the abuse. The victim described being raped "almost every day." She vividly described Defendant's ejaculations as "clear-ish, but yet like a - - clear-ish, white-ish, but yellow-ish stuff" that Defendant referred to as "baby juice." Defendant also put "just his finger" inside her vagina, and she recalled him "sucking" on her breasts. Defendant also licked her vagina. On one particular occasion, Defendant sat on the victim while she was lying on her stomach and attempted to put his penis in her "butt." Defendant was unsuccessful because the victim was "moving." The abuse happened in Defendant's bedroom.

The victim also described an occasion on which Defendant "tried to make [her step-brother] do it with [her]." The victim's step-brother corroborated this particular episode, explaining that he was around twelve years old at the time and both he and the victim were naked in Defendant's bedroom. Defendant was "giving instructions." For example, Defendant told them to take off their clothes and instructed the victim to give her step-brother oral sex. The step-brother was unable to "get [it] up" and eventually "freaked out" and left. Defendant implied that he would have sex with the victim after the step-brother left the room.

On cross-examination, the victim admitted that she had experienced a wide variety of mental and personality problems since early childhood, including visual and auditory hallucinations. The victim also reported that she had been under the care of ten different therapists since being separated from her family and that she had lived in a total of nine different facilities, group homes, and/or foster homes in the four years since she reported the abuse. The victim admitted various behavioral difficulties while in group care, including kicking a pregnant foster mother and slamming someone's hand in a door out of anger. The victim also admitted that she previously told case workers with the Department of Children's Services that Defendant only touched her breast one time with his hand.

The step-brother testified that he recalled hearing "noises" often coming from Defendant's bedroom. These noises happened when his mother was not present at the home. Some of the noises sounded like "moaning." He did not actually see anything happen between Defendant and the victim.

The step-brother admitted that he and the victim engaged in sexual "penetration" on more than one occasion, starting around the time the victim was five years old and he was eight. The step-brother learned about sexual things from Defendant and "this kid named T[]." He explained that Defendant taught him about sex, even making him a "penis growing pump" out of a tube when he was eight or nine years of age. The first time anything happened between the step-brother and the victim, the two were "literally rubbing on each other." The step-brother also admitted that he and "T[]" had sex with the victim and that he had convinced the victim to have sex with other people.

At the conclusion of the State's proof, Defendant moved for a judgment of acquittal on Counts Two (alleging penile/oral penetration), Four (alleging object/vaginal penetration), and Six (alleging penile/vaginal penetration of victim by the step-brother at the direction of Defendant). The State conceded as to Counts Two and Four. The trial court agreed with the concession and amended Count Six to attempted rape of a child based on the proof presented at trial. Defendant elected not to testify and did not present additional proof.

The jury found Defendant guilty of rape of a child in Counts One (alleging penile/vaginal penetration) and Three (alleging digital/vaginal penetration). Additionally, Defendant was found guilty of two counts of attempted rape of a child in Count Five (alleging attempted penile/anal penetration) and Count Six (alleging attempted penile/vaginal penetration of victim by the step-brother at the direction of Defendant) as well as one count of aggravated sexual battery in Count Seven (alleging oral/breast contact) and one count of incest in Count Eight. The trial court sentenced Defendant to twenty-five years for each conviction for rape of a child, ten years for each conviction for attempted rape of a child, ten years for the conviction for aggravated sexual battery, and five years for the conviction for incest. The trial court ordered partial consecutive sentences, imposing a total effective sentence of thirty-five years.

Defendant filed a timely notice of appeal after the denial of a motion for new trial. On appeal, Defendant argues that the State failed to properly elect the particular offenses to be submitted to the jury; that the evidence was insufficient to support the convictions for two counts of rape of a child and two counts of attempted rape of a child; that the trial court improperly sentenced Defendant to an effective sentence of thirty-five years; and that the convictions for rape of a child in Counts One and Three violate due process because they stem from a continuous criminal episode.

*I. Election of Offenses*

Defendant argues that the trial court erred by failing to require the State to properly elect the offenses submitted to the jury. Specifically, Defendant insists that Count One alleged penile-vaginal penetration occurring between on or about February 1,

- 4 -

2007, and October 19, 2010, and Count Three alleged digital-vaginal penetration occurring between on or about February 1, 2007, and October 19, 2010, and that the testimony at trial "did not establish any detail that would guarantee that [Defendant] received a unanimous verdict on Counts [One] and [Three]." Defendant admits that he did not object at trial but raised the issue in a motion for new trial. Defendant argues that he is entitled to plain error relief. The State argues that Defendant waived the issue at trial and is not entitled to plain error relief.

The Tennessee Constitution protects the right of a criminal defendant to a unanimous jury verdict. *See State v. Lemacks*, 996 S.W.2d 166, 169-70 (Tenn. 1999). Our supreme court has held that when the evidence indicates that the defendant has committed more offenses against a victim than the number of offenses charged, the prosecution must elect the particular offense as charged in the indictment for which conviction is sought. *See State v. Adams*, 24 S.W.3d 289, 294 (Tenn. 2000); *State v. Brown*, 992 S.W.2d 389, 391 (Tenn. 1999). The doctrine of election is particularly important in sexual abuse cases against children that occur over a lengthy period of time because each unlawful act is a separate substantive offense rather than a continuous offense. *Tidwell v. State*, 922 S.W.2d 497, 501 (Tenn. 1996). "The two primary purposes of this election requirement are 'to preserve a criminal defendant's right under the state constitution to a unanimous jury verdict, and to allow the State some latitude in the prosecution of criminal acts committed against young children who are frequently unable to identify a specific date on which a particular offense was committed.'" *State v. Knowles*, 470 S.W.3d 416, 423-24 (Tenn. 2015) (quoting *State v. Rickman*, 876 S.W.2d 824, 828 (Tenn. 1994)).

Historically, the State "[wa]s not required to identify the particular date of the chosen offense" in cases of ongoing sexual abuse, and "a particular offense c[ould] often be identified without a date." *State v. Shelton*, 851 S.W.2d 134, 137 (Tenn. 1993). If "the evidence indicate[d] various types of abuse, the prosecution [could] identify a particular type of abuse and elect that offense," or the prosecutor could ask the child victim "to describe unique surroundings or circumstances that help to identify an incident," which could include "identify[ing] an assault with reference to a meaningful event in [the child's] life, such as the beginning of school, a birthday, or a relative's visit." *Id.* at 138. Until recently, the Tennessee Supreme Court "concluded that '[a]ny description that will identify the prosecuted offense for the jury is sufficient.'" *Knowles*, 470 S.W.3d at 424 (quoting *Shelton*, 851 S.W.2d at 138).

Since the filing of the briefs in this case but prior to oral argument, the Tennessee Supreme Court issued its decision in *State v. Qualls*, 428 S.W.3d 1 (Tenn. Jan. 28, 2016), a case with an issue very similar to the issue presented herein. In *Qualls*, the defendant was indicted for thirty-seven counts of sexual battery by an authority figure and one count of incest for abuse of his daughters and an adopted daughter. *Id.* at 9. At the first

trial, the defendant was convicted of all the charges. He appealed, arguing that the State failed to properly elect the facts used to form the basis for each of the offenses. The State conceded error; this Court reversed and remanded the case for a new trial. *See State v. Jimmy Dale Qualls*, No. W2010-02523-CCA-R3-CD, 2012 WL 939001, at *3 (Tenn. Crim. App. Mar. 14, 2012), *no perm. app. filed*. On retrial after remand, Defendant was again convicted of all the counts as alleged in the indictment. On appeal from the retrial, Defendant again argued that the State filed to properly elect conduct for which it sought convictions. *See State v. Jimmy Dale Qualls*, No. W2013-01440-CCA-R3-CD, 2014 WL 4072098, at *5 (Tenn. Crim. App. Aug. 18, 2014), *perm. app. granted* (Tenn. Jan. 15, 2015). This Court again determined that the election was inadequate and remanded for a new trial. The State appealed.

The supreme court granted permission to appeal to determine if the election was proper. Specifically, the court sought to answer the following question:

> whether the election of offenses doctrine, articulated in *Burlison v. State*, 501 S.W.2d 801 (Tenn. 1973), and reaffirmed in *State v. Shelton*, 851 S.W.2d 134 (Tenn. 1993), requires the prosecution to identify a single incident of sexual battery in cases, such as this one, where the child victim testifies to repeated incidents of sexual contact occurring over a substantial period of time but does not furnish any specific details, dates, or distinguishing characteristics as to individual incidents of sexual battery.

*Qualls*, at 4. The court noted that there were not any cases in Tennessee dealing with so-called "generic evidence," where the "victims described with clarity the type of sexual battery perpetrated on them but failed to identify specifically when each alleged act occurred." *Id.* at 13. The court reviewed the procedures and policies used in other jurisdictions in generic evidence cases and concluded:

> [I]n generic evidence cases[,] the prosecution need not elect a specific criminal act or incident as the basis of a conviction for each charge. Instead, the election doctrine may be satisfied in generic evidence cases by the trial court providing a modified unanimity instruction that allows a conviction only if the jury unanimously agrees the defendant committed all the acts described by the victim. However, consistent with prior decisions involving the election of offenses doctrine, the trial court must determine at the conclusion of the State's case-in-chief whether the proof is sufficiently specific as to apply the strict election requirement or whether the election requirement may be satisfied by giving the modified unanimity instruction. *See Knowles*, 470 S.W.3d at 423 (stating that election should occur at the close of the prosecution's case-in-chief). We invite the Tennessee Pattern Jury Instruction Committee to promulgate a pattern jury instruction for use

in child sexual abuse cases involving generic evidence. *See State v. White*, 362 S.W.3d 559, 581 (Tenn. 2012) (inviting the Committee to promulgate a pattern jury instruction for use in trials involving kidnapping and an accompanying felony charge). Until the Committee develops an appropriate instruction, trial courts should use the following instruction in cases involving only generic evidence:

> The State has offered proof in its case-in-chief of more than one criminal act allegedly committed [by the defendant] [by one for whom the State alleges the defendant is criminally responsible]. To ensure a unanimous jury verdict [on the charge] [on each count of the indictment], the State must prove beyond a reasonable doubt the commission of all of the acts described by the alleged victim [as occurring within the time period charged] [as occurring within the time period charged in each Count of the indictment].
>
> In order to find the defendant guilty, you must unanimously agree that the State has proven beyond a reasonable doubt the commission of all of the acts described by the alleged victim [as occurring within the time period charged] [as occurring within the time period charged in each Count of the indictment].

*Qualls*, at 18-19.

The court went on to review the issue in *Qualls* for non-structural constitutional harmless error because the trial court had not given the jury a modified unanimity instruction. In that case, the two victims described unlawful sexual contact on a regular basis over an extended period of time as alleged in the indictment. The victims testified that the abuse occurred at least once a month, with one of the victims testifying that the abuse happened on a weekly basis. The victims each testified that they saw the abuse perpetrated on the other victim. The State, during election of offenses, narrowed the time frame of each individual count down to a one month period of time. The defendant's defense was a blanket denial. Moreover, the trial court instructed the jury that the verdict had to be unanimous. The court concluded "the erroneous lack of a modified unanimity instruction did not contribute to the verdict obtained and that the jury's verdict would have been the same had the modified unanimity instruction been given." *Id.* at 21.

With the decision in *Qualls* in mind, we turn to the case herein. The presentment alleged that the acts took place between February 1, 2007, and October 19, 2010. At the conclusion of the State's proof, Defendant moved to dismiss Counts Two, alleging rape

of a child by fellatio; Four, alleging rape of a child with an "object"; and Six, alleging that Defendant caused the step-brother to rape the victim. The State conceded the failure to prove the elements in Counts Two and Four. The trial court granted the motion for judgment of acquittal with respect to Counts Two and Four and instructed the jury on the lesser included offense of attempted rape of a child in Count Six. In other words, the jury was left with Counts One, Three, Five, Six, and Seven. Defendant is complaining about the election for Count One, penile/vaginal penetration and Count Three, digital/vaginal penetration. After the partial grant of the motion for judgment of acquittal, the trial court determined that the facts set forth "discreet types of penetration, as opposed to discreet occasions" and that there was not "any election that needs to be done." The State responded that any election that was necessary would be "based on what the allegations are . . . in the actual presentment, as in the description of the penetration . . . ." The State also noted that the victim described all of the acts as occurring in the bedroom. In response to the discussion, the trial court crafted a proposed jury instruction as follows:

> So the Court could say, the State has offered proof in this case of more than one alleged[] act committed by the [D]efendant in Counts One and Three.
>
> To ensure a unanimous verdict, the State has relied to elect which alleged act and so forth. The State has elected to submit for your consideration that the acts occurring in Count One and Three were the ones occurring in the bedroom.

Counsel for Defendant agreed and asked the trial court to add "within the time alleged in the indictment." It is not clear from the record whether counsel for Defendant made a valid objection to the proposed charge or form of the election as discussed between the parties.

In the motion for new trial, Defendant argued that the trial court "erred by failing to make the State properly elect the particular offenses submitted to the jury" with respect to Counts One and Three. This Court has repeatedly reminded defendants about the consequences of the failure to object to an issue at trial and the effect on our review of such issues on appeal. *See* Tenn. R. App. P 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Defendant, in a reply brief, insists that this issue is properly preserved by virtue of the fact that counsel raised it in the motion for new trial. In the alternative, Defendant argues that he is entitled to plain error relief. The State insists that Defendant could only get relief via plain error and that he has not established all of the factors necessary for plain error review.

We agree with the State that the issue is waived unless Defendant can establish he is entitled to plain error review. *See* Tenn. R. App. P. 36(a). To determine whether a trial error rises to the level of "plain error," the following five factors must be present:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused [must not have waived] the issue for tactical reasons; and (e) consideration of the error [must be] "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). All five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established. *Id.* at 283.

Both Count One, alleging penile/vaginal penetration, and Count Three, alleging penile/digital penetration, were described by the victim as happening in the bedroom of Defendant on many occasions during the period of time described in the indictment. The testimony of the victim provided what *Qualls* described as generic evidence: she "described with clarity the type of sexual battery perpetrated on [her] but failed to identify specifically when each alleged act occurred. Instead, the victim[] here described a pattern of abuse that occurred over an extended period of time." *Qualls*, at 13. The jury in this case received the following instruction:

> The State has offered proof in its case in chief of more than one act allegedly committed by the defendant, which the State alleges constitutes an element of the offenses as charged in Counts One, Three and Eight of the Indictment.

> To ensure a unanimous verdict, the law requires the State to elect which alleged act testified to the State is - - that the State is relying upon for your consideration in deciding whether or not the defendant is guilty of this offense or any lesser offense.

> The fact that the Court has required the State to elect does not mean that the Court has found that the State has carried its burden of proving those allegations beyond a reasonable doubt. That is for your determination.

In this case, the case - - the State has elected to submit for your consideration that the alleged acts in Counts One, Three, and Eight occurred in the bedroom within the timeframe of this Indictment.

Members of the jury are to consider only the acts alleged in deciding whether or not the defendant has been proven guilty beyond a reasonable doubt as charged in Counts One, Three, and Eight.

The instruction given in this case by the trial court tracks the language of the proposed instruction in *Qualls* to be given in generic evidence cases. Defendant has failed to show that a clear and unequivocal rule of law was breached. Moreover, each count involved a different type of penetration, indicating "various types of abuse, [so] the prosecution may identify a particular type of abuse and elect that offense." *Shelton*, 851 S.W.2d at 138 (citing *State v. Fears*, 659 S.W.2d 370, 374 (Tenn.Crim.App.1983)). Finally, Defendant has not shown that he did not waive the issue for tactical reasons. Therefore, he is not entitled to plain error review.

## II. Sufficiency of the Evidence

Defendant couches his next issue as a challenge to the sufficiency of the evidence for his convictions for rape of a child in Counts One and Three and convictions for attempted rape of a child in Counts Five and Six. In reality, Defendant's argument merely reiterates his argument about the failure of the State to make a proper election of offenses. The State argues that the evidence was sufficient to support the convictions. Because we have already reviewed Defendant's issue with regard to the proper election of offenses, we will review the sufficiency of the evidence.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Reid*, 91 S.W.3d at 277. Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of

fact." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Defendant was charged with rape of a child in Counts One and Three and attempted rape of a child in Count Five. The trial court reduced the charge in Count Six alleging Defendant caused the step-brother to engage in penile/vaginal penetration with the victim from rape of a child to attempted rape of a child prior to submitting the case to the jury. "Rape of a child is the unlawful sexual penetration of a victim by the defendant . . . if the victim is more than three (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522(a). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's the defendant's, or any other person's body, but emission of semen is not required." T.C.A. § 39-13-501(7). A person commits criminal attempt when he acts with the intent to complete a course of action and the conduct constitutes a substantial step toward the commission of the offense. T.C.A. § 39-12-101(a)(3).

At trial, the victim testified that the abuse started when she was four years of age. With respect to Counts One and Three, the victim described Defendant's penetrating her vagina with "his penis" and "his fingers." The victim testified that it went on "for like, a long time" and that she was raped "almost every day." She was able to give a vivid description of Defendant's ejaculations. With respect to Count Five, the victim described one particular occasion of attempted anal penetration where Defendant was sitting on the victim while she was lying on her stomach and Defendant tried to put his penis in her "butt." Defendant was unsuccessful because the victim was "moving." The victim testified that the events occurred in Defendant's bedroom. Additionally, Defendant's sperm was found on a pair of the victim's underwear. With respect to Count Six, both the victim and the step-brother testified that Defendant tried to get the step-brother to "do it with" the victim. Both the victim and the step-brother independently corroborated this event and described Defendant as "kind of giving instructions" by telling the victim to give the step-brother oral sex. Neither the victim nor the step-brother had on clothes at the time. Defendant wanted them to "do it" but the step-brother "freaked out" when he could not "get it up." In our view, the evidence was sufficient to support two convictions for rape of a child and two convictions for attempted rape of a child.

*III. Due Process*

Defendant contends that his convictions for rape of a child in Counts One and Three violate his right to due process because they stemmed from a single continuous episode and involved a single criminal intent. To support his argument, defendant cites *State v. Barney*, 986 S.W.2d 545 (Tenn. 1999). The State argues that there is doubt about whether the test announced in *Barney* is still valid and that there is "nothing in the record to suggest that the [D]efendant was convicted of two counts of rape of a child that occurred as a single continuous offense."

In our view, the evidence in this case does not present a factual scenario that would be appropriate for review via the test announced in *Barney*.[3] In Count One, Defendant was convicted of rape of a child by inserting his penis into the victim's vagina. In Count Three, Defendant was convicted of rape of a child by inserting his fingers inside the victim's vagina. The victim testified that the abuse occurred over the course of several years. There was nothing in the record to suggest that Defendant performed both of these acts during a single criminal episode. Defendant is not entitled to relief on this issue.

## *IV. Sentencing*

Defendant insists that the trial court improperly ordered consecutive sentencing. Specifically, Defendant complains about the trial court's reliance on the "extensive damage" to the victim's mental and emotional health without proof of such and the trial court's failure to articulate the relevant factors for consecutive sentencing. The State counters that the trial court's finding that Defendant was convicted of two or more statutory offenses involving the sexual abuse of a minor that arose from the relationship between Defendant and the victim and the "sustained period of sexual abuse" supported the trial court's order of consecutive sentencing under Tennessee Code Annotated section 40-35-115(b). Moreover, the State points to the victim's own testimony about her four years in therapy to support the degradation of the victim's mental and emotional health as a result of Defendant's abuse.

When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This presumption applies to "within-range sentencing decisions that reflect a proper

---

[3] Although *Barney* has not yet been expressly overruled, this Court is uncertain as to its continued validity following *State v. White*, 362 S.W.3d 559, 578 (Tenn. 2012), and *State v. Watkins*, 362 S.W.3d 551, 552 n.34 (Tenn. 2012). *See also State v. Christopher Scottie Itzol-Deleon*, No. M2014-02380-CCA-R3-CD, 2016 WL 1192806, at *35 (Tenn. Crim. App. Mar. 28, 2016) (Easter, J., dissenting).

application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. A trial court abuses its discretion in sentencing when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). This deferential standard does not permit an appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The defendant bears the burden of proving that the sentence is improper. T.C.A. § 40-35-101, Sentencing Comm'n Cmts.

In reaching its decision, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* T.C.A. § 40-35-210(b); *see also Bise*, 380 S.W.3d at 697-98. Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and also "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

Our supreme court has held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations" "if [the trial court] has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *State v. Pollard*, 432 S.W.3d 851, 859-62 (Tenn. 2013). Thus the imposition of consecutive sentencing is subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed" and that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" T.C.A. § 40-35-103(2), (4). Further, "[s]o long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Pollard*, 432 S.W.3d at 862 (citing Tenn. R. Crim. P. 32(c)(1) ("The order [for consecutive sentences] shall specify the reasons for this decision and is reviewable on appeal.")); *see also Bise*, 380 S.W.3d at 705.

In fashioning Defendant's sentence, the trial court determined that two enhancement factors applied: (1) that Defendant had a criminal history of two worthless check convictions in addition to those necessary to establish his range and (2) that Defendant abused a position of private trust as the biological father of the victim. With

regard to consecutive sentencing, the trial court determined that Defendant was "convicted of two or more statutory crimes of sexual abuse that were sustained over a period of time." *See* T.C.A. § 40-35-115(b)(5). The trial court noted "[t]he extensive damage that this caused in the child's mental and emotional health, as well as to the family in this case," and found that "the interest of society needs to be protected from the [D]efendant in this case who has abused a child of such [age] and that the interest of society requires consecutive sentencing."

Because the trial court provided reasons on the record establishing at least one of the statutory grounds for consecutive sentencing, we afford the trial court's decision a presumption of reasonableness. The victim testified that she had suffered both emotionally and mentally due to the abuse she suffered at the hands of Defendant that occurred almost every day for several years. After being removed from the home, the victim reported that she had been under the care of ten different therapists and lived in a total of nine different facilities, group homes, and/or foster homes in the four years since she reported the abuse. The victim admitted various behavioral difficulties while in group care, including kicking a pregnant foster mother and slamming someone's hand in a door out of anger. The victim also admitted that she had experienced a wide variety of mental and personality problems since early childhood, including visual and auditory hallucinations. The victim was Defendant's biological daughter. Furthermore, the record shows that the trial court followed the principles and purposes of the Sentencing Act, and the record supports the trial court's findings. We conclude that the trial court did not abuse its discretion by sentencing Defendant to serve twenty-five years for each rape of a child conviction, ten years for each attempted rape of a child conviction, ten years for the aggravated sexual battery conviction, and five years for the incest conviction. The trial court ordered the rape of a child sentences to be served concurrently with each other but consecutively to the attempted rape of a child sentence. The remaining sentences were ordered to be served concurrently, for a total effective sentence of thirty-five years. The trial court did not abuse its discretion. Accordingly, Defendant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE

- 14 -